# EXHIBIT

## "1"

### *Defendant's Amended Counterclaim*
(filed 8/13/2018 in Cause No. 2012-CI-05517)

FILED
8/13/2018 12:00 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Maria Abilez

11CIT/PPS SAC1

## CAUSE NUMBER 2012-CI-05517

| | | |
|---|---|---|
| **FIDELITY NATIONAL TITLE** | § | **IN THE DISTRICT COURT** |
| **INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **Versus,** | § | **224th JUDICIAL DISTRICT** |
| | § | |
| **ANDREW M. PARKER,** | § | |
| **Defendant.** | § | **BEXAR COUNTY, TEXAS** |

## DEFENDANT'S AMENDED COUNTERCLAIM

NOW COMES DEFENDANT, ANDREW M. PARKER, [hereinafter "Parker], who files

this his *Defendant's Amended Counterclaim* and, in support thereof, respectfully shows as follows:

### I.   PARTIES TO THE CASE

1.1    Andrew M. Parker, [hereinafter "Parker"], has appeared in this case and can be

served by and through E-File to his attorney of record, Kristine Arlitt, Attorney at Law, PO Box

90771, San Antonio, Texas 78212.

1.2    Fidelity National Financial, Inc., [hereinafter "Fidelity" or "Counter Defendant"],

the holding company for Fidelity National Title Insurance Company can be served at 601 Riverside

Avenue, Jacksonville, FL 32204.

1.3    Fidelity National Title Insurance Company, [hereinafter "Fidelity" or "Counter

Defendant"], has appeared in this case and can be served by and through E-File to its attorney of

record, Gregory T. Brewer, via E-File or 5151 Beltline Road, Suite 410, Dallas, Texas 75254.

1.4    Jonathan J. Cunningham, [hereinafter "Cunningham" or "Counter Defendant"], an

individual, can be served at Fidelity National Title Insurance Company, 5151 Beltline Road, Suite

410, Dallas, Texas 75254.

1.5     Gregory Brewer, [hereinafter "Brewer" or "Counter Defendant"], an individual, can be served at Fidelity National Title Insurance Company, 5151 Beltline Road, Suite 410, Dallas, Texas 75254.

1.6     Tramaine Y. Scott, a/k/a "Tramaine Yvonne Tinner", [hereinafter "Scott" or "Counter Defendant"], an individual, can be served at Fairway Independent Mortgage Corporation, 1800 Golden Trail Court, Carrollton, Texas 75010.

1.7     Shawn Heine, [hereinafter "Heine" or "Counter Defendant"], an individual, can be served at his last known address: Fidelity National Title Insurance Company, 5151 Beltline Road, Suite 410, Dallas, Texas 75254.

1.8     Amy Miles, [hereinafter "Miles" or "Counter Defendant"], an individual, can be served at Fidelity National Title Insurance Company, 5151 Beltline Road, Suite 410, Dallas, Texas 75254.

1.9     Sherry Finley, [hereinafter "Finley" or "Counter Defendant"], an individual, can be served at Fidelity National Title Insurance Company, 5151 Beltline Road, Suite 410, Dallas, Texas 75254.

1.10    Christina Johnson, [hereinafter "Johnson" or "Counter Defendant"], an individual, can be served at Fidelity National Title Insurance Company, 5151 Beltline Road, Suite 410, Dallas, Texas 75254.

1.11    Chris Fredericks, [hereinafter "Fredericks" or "Counter Defendant"], an individual, can be served at Fidelity National Title Insurance Company, 5151 Beltline Road, Suite 410, Dallas, Texas 75254.

1.12    John M. Ledyard, [hereinafter "Ledyard" or "Counter Defendant"], an individual, can be served at Fidelity National Title Insurance Company, 5151 Beltline Road, Suite 410, Dallas, Texas 75254.

1.13    Cale O'Brien, [hereinafter "O'Brien" or "Counter Defendant"], an individual, can be served at Fidelity National Title Insurance Company, 5151 Beltline Road, Suite 410, Dallas, Texas 75254.

## II.
## RELEVANT PROCEDURAL HISTORY

2.1    In 2012, this litigation began when Fidelity sued Parker in an attempt to collect at least $1,500,000.00 plus attorney fees, costs, pre-judgment interest and post-judgment interest.

2.2    On or about June 19, 2014, Plaintiff, Fidelity National Title Insurance Company, filed its *Plaintiff's First Amended Original Petition*. This is the Plaintiff's live pleading in this matter.  Fidelity brought causes of action against Parker for negligent misrepresentation, fraud, and statutory fraud pursuant to Texas Business and Commerce Code §27.01.   Fidelity brought all causes of action against Parker pursuant to the subrogation rights from a Title Policy Fidelity had sold to Parker in 2007.

2.3    Parker brings certain counterclaims against Fidelity acting under subrogation rights from Chase Bank/WAMU and certain claims against the actions of Fidelity and individuals related to Fidelity.

2.4    On or about June 23, 2014, Fidelity filed its *Plaintiff's Traditional Motion for Partial Summary Judgment* relating to its cause of action against Parker brought pursuant to Texas Business and Commerce Code §27.01 with the following listed supporting summary judgment evidence:

Exhibit A    HUD Settlement Statement

*Defendant's Amended Counterclaim*                                              *Page 3*

| | |
|---|---|
| Exhibit B | Texas Agreement and Disclosure (Home Equity Line of Credit Note) |
| Exhibit C | Texas Home Equity Line of Credit Security Instrument |
| Exhibit D | Mortgage Policy of Title Insurance |
| Exhibit E | Home Equity Affidavit and Agreement |
| Exhibit F | Criminal Indictment |
| Exhibit G | Verified Complaint for Forfeiture |
| Exhibit H | Assignment of loan to JP Morgan Chase |
| Exhibit I | Forfeiture Order |
| Exhibit J | Plaintiff's Payment |
| Exhibit K | Affidavit of Shawn Heine (Plaintiff's Recoupment Counsel) |
| Exhibit L | Affidavit of Tramaine Y. Scott RE: Exhibit E-I (public records) |
| Exhibit M | Affidavit of Tramaine Y. Scott RE: reasonable and necessary attorney's fees |
| Exhibit N | Business Records Affidavit of Plaintiff |
| Exhibit O | Business Records Affidavit of JP Morgan Chase |

2.5     On or about August 18, 2014, this Honorable Court entered its *Order Granting Plaintiff's Traditional Motion for Partial Summary Judgment.* [Clerk's Record, Vol. 4270, Page 0813].

2.6     On or about September 29, 2014, Parker filed his Response to *Motion for Summary Judgment, Request for Abatement of Proceedings and Counter-Claims Against Fidelity National Title Company* with the following listed supporting summary judgment evidence:

| | |
|---|---|
| Exhibit 1 | Affidavit of Andrew Maxwell Parker, dated July 14, 2014 |

2.7    On or about October 27, 2014, Fidelity filed its *Plaintiff's Motion for Final Summary Judgment* with supporting summary judgment evidence.

2.8    On or about December 3, 2014, Parker filed his *Defendant's Response to Plaintiff's Motion for Final Summary Judgment*, with the following listed supporting summary judgment evidence:

| | |
|---|---|
| Exhibit A | Excerpt of Indictment in *United States of America v. Andrew Maxwell Parker*, Case Number SA-08-CR-292, filed April 30, 2008 |
| Exhibit B | Excerpt from Indictment in *United States of America v. Andrew Maxwell Parker*, Case Number SA-08-CR-292, filed April 30, 2008 |
| Exhibit C | Excerpt of *Government's Response to Motion Filed Pursuant to 28 U.S.C. §2255 to Vacate. Set Aside, or Correct Sentence*, filed by the United States of America in *United States of America v. Andrew Maxwell Parker*, Case Number SA-11-CA-285 and SA-08-CR292, filed July 12, 2011 |
| Exhibit C | *Response to Motion for Summary Judgment, Request for Abatement of Proceedings and Counter-Claims Against Fidelity National Title Company*, filed by Parker, dated July 14, 2014 |
| Exhibit Unlabeled | Affidavit of Andrew Maxwell Parker, dated July 14, 2014 |

2.9    On or about December 4, 2014, Parker filed his *Defendant's Supplemental Response to Plaintiff's Request for Final Summary Judgment*, with the following listed supporting evidence:

| | |
|---|---|
| Exhibit Unlabeled | Docket Sheet in *USA v. Parker*, SA-11-CA-285 and SA-12-CR-1176, filed in U.S. District Court, Western District of Texas |

2.10    On or about December 5, 2014, Fidelity withdrew its *Motion for Final Summary Judgment*.

2.11    On or about March 10, 2015, Fidelity filed its *Plaintiff's Traditional Motion and No Evidence Motion for Final Summary Judgment*, with the following listed supporting summary judgment evidence:

*Defendant's Amended Counterclaim*                                                                                    *Page 5*

Exhibit A       HUD Settlement Statement

Exhibit B       Texas Agreement and Disclosure (Home Equity Line of (Credit Note)

Exhibit C       Texas Home Equity Line of Credit Security Instrument

Exhibit D       Mortgage Policy of Title Insurance

Exhibit E       Home Equity Affidavit and Agreement

Exhibit F       Criminal Indictment

Exhibit G       Verified Complaint for Forfeiture

Exhibit H       Assignment of loan to JP Morgan Chase

Exhibit I        Forfeiture Order

Exhibit J        Plaintiff's Payment

Exhibit K       Order to Post Notice of Complaint for Forfeiture and For Publication

Exhibit L       Proof of Service on Forfeiture

Exhibit M       Affidavit of Tramaine Y. Scott RE: Public Records

Exhibit N       Business Records Affidavit of Plaintiff

Exhibit O       Business Records Affidavit of JP Morgan Chase

Exhibit P       Order Granting Sanctions Against Plaintiff Fidelity Title Insurance Company

   2.12   On or about April 14, 2015, Parker filed his *Defendant's Response to Plaintiff's Pending Motion for Summary Judgment and No Evidence Motion for Summary Judgment and Request for Additional Response Time*.

   2.13   On or about June 9, 2015, Parker filed his *Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment Set for June 10, 2015*.

2.14    On or about June 10, 2015, this Honorable Court entered its *Order Granting Plaintiff's Traditional Motion and No Evidence Motion for Final Summary Judgment.* [Clerk's Record, Vol. 4394, Page 2045].

2.15    On or about August 12, 2015, Parker filed his *Second Request for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment.*

2.16    On or about November 5, 2015, Parker filed his *Request for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment.*

2.17    On or about February 8, 2016, Parker filed his *Defendant's Response to Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment.*

2.18    On December 13, 2016, Fidelity obtained an Abstract of Judgment based on the interlocutory Order entered by the Court on or about June 10, 2015 styled *Order Granting Plaintiff's Traditional Motion and No Evidence Motion for Final Summary Judgment.*

2.19    On March 8, 2017 this Court signed *the Second Amended Order Granting Andrew Maxwell Parker's Motion for Sanctions,* [*nunc pro tunc* corrections].

2.20    On September 20, 2017, this Court, the Honorable Karen Pozza presiding, signed its Order denying Fidelity's *Motion for Entry of Final Judgment;* setting aside the June 10, 2015 *Order Granting Plaintiff's Traditional Motion and No Evidence Motion for Final Summary Judgment;* and, setting aside the January 25, 2016 *Order on Defendant's Motion to Reconsider Traditional and No Evidence Final Summary Judgment.*

2.21    On July 20, 2018, Fidelity filed its *Plaintiff's No Evidence Motion for Summary Judgment Regarding Defendant's Putative Counter Claims.*

2.22    On August 6, 2018 Parker filed his *Response to Plaintiff's No Evidence Motion For Summary Judgment.*

2.23    Hearing on Fidelity's *Plaintiff's No Evidence Motion for Summary Judgment Regarding Defendant's Putative Counter Claims* is set for August 14, 2018.

### III.
### FACTUAL HISTORY

3.1    In 2003, Parker purchased his home located at 407 East Wildwood, San Antonio, Texas 78212, [hereinafter "Wildwood"].

3.2    On or about December 6, 2006, the United States filed a *Verified Complaint for Forfeiture* against Wildwood.   Parker was not a party to this civil cause of action. The *Verified Complaint for Forfeiture* was "SEALED" by the United States District Court. The Record is void of any service of the Complaint on Parker.

3.3    On or about December 6, 2006, the United States filed a Lis Pendens against Wildwood and perfected the filing by serving the County Clerk of Deed Records, Bexar County, Texas.   The Record is void of any service of the Lis Pendens on Parker.

3.4    On or about December 11, 2006, the United States District Court entered its Order to Post Notice of Complaint for Forfeiture and For Publication.   The Record is void of service of the Order on Parker.

3.5    On or about December 22, 2006, Parker entered into a Home Equity Line of Credit with Washington Mutual[1] secured by a Deed of Trust on Wildwood.

3.6    On or about January 4, 2007, at 8:27 a.m. Fidelity issued a title policy relating to the Home Equity Line of Credit and its security, Wildwood.

3.7    On or about April 30, 2008, an Indictment was returned against Parker. The Indictment was SEALED.

---

[1] Washington Mutual morphed into JPMorgan Chase during the time period relevant to this matter.
*Defendant's Amended Counterclaim*                                                      *Page 8*

3.8     On or about May 1, 2008, the Indictment was un-sealed and Parker learned of the Indictment.

3.9     On or about December 8, 2008, JPMorgan Chase Bank filed a *Notice of Claim and Application for Adjudication of Validity of Interest in Forfeited Property* in 08-CR-292.

3.10    On or about December 8, 2008, JPMorgan Chase Bank filed a *Notice of Claim* in 5:06-cv-1066.

3.11    On or about March 18, 2009 the U.S. Government filed it *Motion for Summary Judgment and Statements of Facts and Memorandum of Law*.

3.12    On or about March 18, 2009, the U.S. Government filed an *Affidavit of Special Agent Gregory P. Pratt* in support of its *Motion for Summary Judgment*.

3.13    On or about May 8, 2009, the United States District Court entered its Order finding that JPMorgan Chase's lien against Wildwood in conjunction with the Home Equity Line of Credit was filed subsequent to the government's Lis Pendens.

3.14    The United States District Court ordered that the government was to foreclose on Wildwood; and, JPMorgan Chase lost all interest in Wildwood.

3.15    Because Fidelity had failed to properly ascertain the existence of the Lis Pendens filed approximately 1-month prior to the issuance of the Title Policy, Fidelity paid JPMorgan Chase the $1,500,000 amount insured by the Fidelity Title Policy.

3.16    On or about June 19, 2014, Fidelity filed its *First Amended Plaintiff's Original Petition* naming Andrew M. Parker as the defendant and seeking to recover $1,500,000 plus attorney fees, costs, pre-judgment interest and post-judgment interest from Parker.

IV.
## SUMMARY OF THE COUNTERCLAIM COMPLAINTS

A.    **In the lawsuit against Parker, Fidelity proffered to the District Courts sitting in Bexar County, Texas, false, fraudulent, perjured evidence and misleading pleadings to obtain the granting of summary judgments and continues to make demands on Parker in an organized, well-orchestrated scheme that evidences and supports Parker's counterclaims.**

4.1    In part, Fidelity proffered as summary judgment evidence in support of its motions for summary judgment Affidavits attested to and signed by (1) Shawn Heine, Recoupment Counsel of Fidelity[2]; and, (2) Tramaine Y. Scott, a prior attorney of Record for Fidelity.

4.2    Shawn Heine's Affidavit contained material, false and fraudulent statements of alleged facts that the Court stated in its Order "proved " Fidelity was entitled to damages and a judgment against Parker. The false and fraudulent testimony of Shawn Heine was the basis for this Honorable Court granting summary judgment in favor of Fidelity. Shawn Heine committed perjury to assist Fidelity in fraudulently obtaining judgments in excess of $3,000,000.00 against Parker.

4.3    Tramaine Y. Scott, Texas Bar Number 24060581, a duly licensed attorney in the State of Texas, is an Officer of the Court. On behalf of Fidelity, Tramaine Y. Scott presented the perjured testimony of Shawn Heine to this Honorable Court in support of Fidelity's requests for summary judgment.

4.4    On at least sixteen (16) occasions, the Counter Defendants, and specifically Fidelity's counsel Tramaine Y. Scott, were made fully aware that the testimony of Shawn Heine was fraudulent, false and without basis in fact.

---

[2] Shawn Heine represents that he is an attorney. However, the State Bar of Texas does not have Mr. Heine shown as a licensed attorney in the State of Texas.

4.5     However, the Counter Defendants proceeded with intentionally committing fraud on this Honorable Court; misleading this Honorable Court as to the truth; and, assisting Shawn Heine in committing perjury before this Honorable Court in obtaining judgments for over $3,000,000.00 against Parker.

4.6     To date, Fidelity and Counter Defendants have failed and continue to fail to Non-Suit and remove its causes of actions against Parker, but for, the cause of action unlawfully brought pursuant to Texas Business and Commerce Code §27.01 after Parker moved the Court to strike the cause of action.

**B.      Fidelity intentionally misrepresented the law of the State of Texas relating to statutory fraud to this Honorable Court to obtain an unlawful judgment in excess of $1,500,000.00 against Parker that is evidence to support Parker's counterclaims.**

4.7     The Texas Supreme Court long ago determined that a title company does not have a statutory fraud claim under Texas Business and Commerce Code §27.01. However, Fidelity, Counter Defendants and specifically its counsel Scott represented and argued to this Honorable Court that Fidelity was entitled under the laws of the State of Texas to a recovery for statutory fraud. Fidelity obtained a judgment in excess of $1,500,000.00 against Parker by erroneously representing to this Honorable Court that the laws of the State of Texas provided Fidelity with a cause of action against Parker for statutory fraud pursuant to Texas Business and Commerce Code §27.01.

**C.      Fidelity, through Chase Bank, was negligent because Fidelity failed to notice the Federal District Court that the alleged statements of fact in the Affidavit of Special FBI Agent Gregory P. Pratt were false and therefore precluded the Government's Motion for Summary Judgment wherein Parker lost his home, Wildwood.**

4.8     In the related United States District Court matter, Fidelity failed to provide summary judgment evidence that FBI Special Agent Gregory P. Pratt's affidavit and factual basis

proffered by AUSA Diana Cruz-Zapata in SA:06-cv-1066 were false and could not be the basis of Parker losing title to his home, Wildwood.

4.9     The factual basis for the Government's Motion for Summary Judgment was that wire transfers of money were received at Comerica Bank in San Antonio, Texas.

4.10     However, the FDIC, Federal Reserve and Comerica Bank have confirmed there was no Comerica Bank in San Antonio, Texas, as stated by AUSA Diana Cruz-Zapata and FBI Special Agent Gregory P. Pratt.   Therefore, the wire transfers of money alleged by the government were factually impossible.

4.11     Fidelity failed to defend the title to Parker's Wildwood home. Rather, Fidelity allowed the loss of the Wildwood home and paid for the loss of the home allegedly pursuant to the subject Title Policy Fidelity had previously issued relating to the home.

4.12     Now, Fidelity egregiously seeks compensation from Parker for its failure to defend the title to the Wildwood home.

**D.     On December 13, 2016, Fidelity obtained an unlawful Abstract of Judgment based on the interlocutory Order entered by the Court on or about June 10, 2015 styled *Order Granting Plaintiff's Traditional Motion and No Evidence Motion for Final Summary Judgment.***

4.13     On December 13, 2016, Fidelity unlawfully obtained an Abstract of Judgment based on the interlocutory Order entered by the Court on or about June 10, 2015 styled *Order Granting Plaintiff's Traditional Motion and No Evidence Motion for Final Summary Judgment*. [Abstract of Judgment, Bexar County Public Records, Book 17399, Page 2306-2307, Document 20150151217].

4.14     On September 20, 2017, this Court, the Honorable Karen Pozza presiding, signed its Order denying Fidelity's Motion for Entry of Final Judgment; setting aside the June 10, 2015 interlocutory Order Granting Plaintiff's Traditional Motion and No Evidence Motion for Final

*Defendant's Amended Counterclaim*                                                                                 *Page 12*

Summary Judgment; and, setting aside the January 25, 2016 Order on Defendant's Motion to Reconsider Traditional and No Evidence Final Summary Judgment.

**E.   Fidelity contract for Title Policy**

4.15   In 2006, Parker was the sole owner of a home located at 407 East Wildwood, San Antonio, Texas ["Wildwood"].

4.16   On or about December 21, 2006, at the inducement and relying upon the representations of Fidelity, Parker entered into a contract with Fidelity and bought and paid for a Title Policy, ["Title Policy"]. The contracted for Title Policy issued by Fidelity was represented to insure the title to the subject Wildwood property to allow Parker to obtain a home equity line of credit for $1,500,000 from Washington Mutual and secured by the Wildwood property. [Mortgagee Policy of Title Insurance attached hereto as Exhibit 1].[3]

4.17   Pursuant to the terms of the contract for the Title Policy, Fidelity insured:

"as of Date of Policy shown in Schedule A against loss or damage not exceeding the amount of insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than a (sic) stated therein:

2. Any defect in or lien or encumbrance on the title;

4. The invalidity or unenforceability of the lien of the insured mortgage upon the title.

5. The priority of any lien or encumbrance over the lien of the insured mortgage.

8. Lack of good and indefeasible title.

'The company also will pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extend (sic) provided in the Conditions and Stipulations.'"

---

[3] Washington Mutual morphed into JP Morgan Chase Bank and the Court Orders reflect such change.

*Defendant's Amended Counterclaim* *Page 13*

4.18    Schedule A of the Title Policy shows the date of the policy to be January 4, 2007 at 8:27 a.m.

4.19    Therefore, Fidelity insured the title of Wildwood for any incumbrances or issues with the title that existed as of January 4, 2007 at 8:27 a.m.

4.20    Unbeknownst to Parker on December 22, 2006 when contracting for the Title Policy, a Lis Pendens had been filed against Wildwood on or about December 6, 2006 stemming from Cause No. SA-06-CA-1066 in United States District Court, Western District of Texas, San Antonio Division.

4.21    The January 4, 2007 Title Policy clearly insured and protected Parker and Washington Mutual, later JPMorgan Chase Bank, from the December 6, 2006 Lis Pendens.

4.22    However, Fidelity intentionally failed to take any action whatsoever or file any pleadings in either the United States District Court or any State District Court to protect the title to Wildwood and to fulfill its obligations as contracted therefore in the Title Policy. Fidelity took no action. In fact, Fidelity:

   a.  Failed to defend against the December 6, 2006 Lis Pendens although the government's motion for summary judgment was based on false evidence that Comerica Bank was in San Antonio, Texas.

   b.  Failed to defend against the December 6, 2006 Lis Pendens although the government's motion for summary judgment was based on the perjurious affidavit of Special FBI Agent Gregory P. Pratt's testimony that Comerica Bank was located in San Antonio, Texas.

   c.  Failed to determine the FDIC would have provided evidence that there was no Comerica Bank in San Antonio, Texas to have received any wire signal or wire transfer of funds as testified to by FBI Special Agent Pratt and proffered to the District Court by AUSA Diana Cruz-Zapata in SA:06-cv-1066.

   d.  Failed to determine that Comerica Bank would have testified or provided evidence that there was no Comerica Bank in San Antonio to receive any wire signal or wire transfer of funds as testified to by FBI Special Agent Pratt and proffered to the District Court by AUSA Diana Cruz-Zapata in SA:06-cv-1066.

e. Failed to determine that the Federal Reserve would have testified and provided evidence that there was no Comerica Bank in San Antonio to receive any wire signal or wire transfer of funds as testified to by FBI Special Agent Pratt and proffered to the District Court by AUSA Diana Cruz-Zapata in SA:06-cv-1066 .

f. Failed to determine that the FDIC, Comerica Bank and the Federal Reserve would have testified or provided evidence that there was no Comerica Bank in San Antonio to receive any wire signal or wire transfer of funds as as testified to by FBI Special Agent Pratt and proffered to the District Court by AUSA Diana Cruz-Zapata in SA:06-cv-1066.

g. Failed to defend and defeat the invalid and unenforceable Lis Pendens filed on December 6, 2006 because the government could not execute the Lis Pendens based on the government's perjurious filings and affidavits stating Comerica Bank was in San Antonio, Texas as the recipient of the wire signals the subject of the Government's Lis Pendens, forfeiture and related proceedings.

h. Failed to defend against the priority of the December 6, 2006 invalid Lis Pendens because the lien filed by WAMU/Chase on December 26, 2016 would have been superior to the invalid Lis Pendens if Fidelity had diligently responded to the Government's perjurious filings and evidence.

4.23    The United States District Court found that the December 6, 2006 Lis Pendens had been filed prior to JPMorgan Chase filing its lien securing the home equity line of credit.

4.24    Due to Fidelity's failure to perform pursuant to the terms of the contracted for Title Policy, Parker lost his home, the Wildwood property.

4.25    Parker suffered extreme emotional distress, sleepless nights, headaches, trauma, and public disgrace and ridicule from the failure of Fidelity to fulfill its obligations pursuant to the contracted Title Policy and failure to protect the title to Parker's home.

4.26    In 2012, Fidelity filed suit against Parker alleging numerous causes of action in its attempt to obtain judgment against Parker for $1,500,000.00, attorney fees, costs, pre-judgment interest and post-judgment interest.

*Defendant's Amended Counterclaim*                                                          *Page 15*

4.27    In 2012, Fidelity and Counter Defendants were on actual notice by the face of Parker's indictment that clearly and accurately evidence that Parker was indicted in "2008" as well as all public legal systems and publications relating to the matter.

4.28    Since 2012, Fidelity and Counter Defendants have been on actual notice Parker was indicted in 2008 by Parker's sworn to affidavit supported by the face of Parker's indictment reading "08" and Parker's docket sheet on May 12, 2012 contrary to the Counter Defendants' pleadings in this cause number.

4.29    The actions of the Counter Defendants since the filing of the lawsuit against Parker evidences that the Counter Defendants entered into a conspiracy with at least two (2) of its in-house counsel, Shawn Heine and Tramaine Scott, to obtain by nefarious and fraudulent means before this Honorable State District Court two judgments for $3,000,000.00, attorney fees, costs, pre-judgment interest and post-judgment against Parker.

4.30    The actions of the Counter Defendants since the filing of the lawsuit against Parker evidences that the Counter Defendants entered into a conspiracy with at least two (2) of its in-house counsel, Shawn Heine and Tramaine Scott, and are attempting to obtain by nefarious and fraudulent means before this Honorable State District Court another judgment for $1,500,000.00 attorney fees, costs, pre-judgment interest and post-judgment against Parker.

F.    **Fidelity proffered false, fraudulent, perjured and misleading summary judgment evidence to obtain granting of summary judgments**

4.31    In support of its *Traditional Motion for Partial Summary Judgment*, Fidelity presented to this Court the Affidavit of Shawn Heine, Recoupment Counsel of Plaintiff.   Heine's Affidavit stated in relevant part:

> "4.    Defendant [Parker] owned [Wildwood].  On December 21, 2006, [Parker] borrowed $1,500,000.00 from Washington Mutual

N.A.  In conjunction with the loan, [Parker] conveyed a security interest in [Wildwood] to Washington Mutual. . . .

5.      [Parker] represented that [Wildwood] was not encumbered by any other liens or matters that would adversely affect the priority of Washington Mutual's lien, other than those matters that had been previously disclosed by [Parker].

6.      Unknown to [Fidelity], but known to [Parker], on April 30, 2000, the United States Government filed charges against [Parker] for various crimes . . .  In conjunction with the criminal charges brought against [Parker], the United States, on December 6, 2006, filed a civil action seeking forfeiture of [Wildwood].  Said civil forfeiture action would effectively render Washing Mutual's security void. [Parker] did not disclose to [Fidelity] that he was under federal indictment or that the United States was actively seeking to divest [Parker] of his interest in [Wildwood]."

4.32    Heine's Affidavit, which is testimony under oath to this Honorable Court, contains multiple false, fraudulent and misleading statements that render the Affidavit nothing more than perjured testimony to this Honorable Court. Heine's testimony to alleged "facts" is disproved by Fidelity's own evidence presented to the Court.

4.33    Heine's testimony to this Honorable Court was that on December 22, 2006, (mis-stated in the Heine Affidavit as December 21, 2006), when Parker borrowed money from Washington Mutual, **Parker had actual knowledge** that he had (1) been charged with criminal charges by the United States; and, (2) Parker had actual knowledge that a civil forfeiture action had been filed by the United States against Wildwood.

### 1.      **On December 22, 2006, Parker had no actual knowledge of a non-existent criminal Indictment that was later brought in 2008**

4.34    Fidelity and Counter Defendants presented to the State District Court sitting in Bexar  County, Texas, a criminal Indictment to support its position and Heine's testimony that on December 22, 2006, Parker had actual knowledge that an Indictment existed and had been

*Defendant's Amended Counterclaim*                                                          *Page 17*

returned.  However, a simple review of the very face of the Indictment clearly shows that the criminal case was not even started until 2008, and, the Indictment was not returned until 2008, approximately two years after December 22, 2006.  Further, the very face of the Indictment evidences that the Indictment was not filed with the United States District Court until April 30, 2008. At that time, the Indictment was filed "SEALED".   The Indictment was un-sealed on May 1, 2008.

4.35   Parker could not have had actual knowledge back on December 22, 2006 of a criminal case that was not brought until 2008, or an Indictment that was not even unsealed until May 1, 2008.

### 2.   On December 21, 2006, Parker had no actual knowledge the United States was seeking forfeiture of Wildwood

4.36   In support of the motions for summary judgment, the Counter Defendants presented multiple summary judgment evidence that they represented to the State District Court that Parker had actual knowledge of the matters in the United States District Court.

4.37   The Counter Defendants presented a *Verified Complaint for Forfeiture* to support its position before this Honorable Court and Heine's testimony that on December 22, 2006, Parker had actual knowledge that a forfeiture action existed. However, a review of the *Verified Complaint for Forfeiture* evidences that although the pleading was filed at 2:31 p.m. on December 6, 2006, the pleading was "SEALED".   Important to note, Parker was not a party to the action involving the *Verified Complaint for Forfeiture* and could not possibly have had actual knowledge of a "SEALED" proceeding.

4.38   Additionally, in support of it motions for summary judgment and Heine's perjured testimony, the Counter Defendants presented an Order from the United States District Court granting the Verified Complaint for Forfeiture.  The Order was rendered on May 8, 2009,

*Defendant's Amended Counterclaim*                                                    *Page 18*

approximately three (3) years after December 22, 2006, in a case that Parker was not a party thereto. There is no possible way Parker could have known on December 22, 2006, of an Order that was not even rendered or signed until May 8, 2009.

4.39    Further, in support of its motions for summary judgment and Heine's perjured testimony, the Counter Defendants presented an Order to Post Notice of Complaint for Forfeiture and for Publication from the United States District Court.   The Order was rendered on December 11, 2006, in the same case that Parker was not a party thereto. The Order does not involve Parker. The Order simply instructs the government as to manner and means of posting. The Order does not have Parker's name on its face or give any credible summary judgment evidence that Parker had actual knowledge of the government's federal court proceeding.

4.40    Still further, in support of its motions for summary judgment and Heine's perjured testimony, the Counter Defendants presented a Process Receipt and Return that evidences a Lis Pendens was filed against Wildwood on December 6, 2006. However, the Process Receipt and Return clearly evidences that service of the Lis Pendens was on "County Clerk of Deed Records, Bexar County".   The Process Receipt and Return does not show any service on Parker or even show Parker's name on its face. The Process Receipt and Return does not give any evidence that Parker had actual knowledge of the Lis Pendens.

4.41    Moreover, the Process Receipt and Return clearly evidences that if Fidelity and Counter Defendants had performed its due diligence prior to issuing the Title Policy, the subject of this lawsuit, Fidelity would have had knowledge of the Lis Pendens.

**3.    Parker filed pleadings and summary judgment evidence that put Fidelity on notice that Heine's testimony was perjury, and, Fidelity's position as to Parker's actual knowledge of the Indictment and forfeiture proceeding was unfounded.   But, the Counter Defendants proceeded before this Honorable Court**

4.42    Parker filed numerous pleadings and summary judgment evidence in this cause number and lawsuit that exposed and countered Heine's perjured testimony. Parker's pleadings and summary judgment evidence put the Counter Defendants on notice that Fidelity's representations to this Honorable Court in its pleadings and Heine's perjured testimony should have been withdrawn by Fidelity and the Counter Defendants. Parker put this Honorable Court and the Counter Defendants on notice of the true facts of this case at least sixteen (16) times. Yet, the Counter Defendants continued and continue today to make misrepresentations to this Honorable Court and rely on perjured testimony to obtain unlawful summary judgment against Parker. Parker filed the following with this Honorable Court:

a.    On or about May 25, 2012, Parker filed his Motion for Summary Judgment wherein Parker clearly stated that the Indictment was sealed until May 1, 2008.

b.    Parker filed his Affidavit, dated May 25, 2012, wherein Parker clearly testifies that the Indictment was sealed and he did not have actual knowledge of the Indictment until May 1, 2008.   Further, Parker's Affidavit clearly states that when he entered into the loan documents the subject of this lawsuit on or about December 22, 2006, Fidelity presented Parker with a title policy that failed to show the subject Lis Pendens encumbering Wildwood.

c.    On or about September 29, 2014, Parker filed his *Response to Motion for Summary Judgment, Request for Abatement of Proceedings and Counter-Claims Against Fidelity National Title Company* wherein Parker clearly stated that he had no knowledge of the Lis Pendens prior to closing the loan with Washington Mutual; Parker relied on Fidelity's representations to be knowledgeable in issuance of title policies that no encumbrances affected the title to Wildwood; and, Fidelity breached its duties to Parker and failed to exercise due diligence in issuing the Title Policy insuring against encumbrances against the title to Wildwood that existed as of January 4, 2007.

d.    Parker filed his Affidavit, dated July 14, 2014, wherein Parker clearly testifies that he had no actual knowledge of the Lis Pendens prior to closing the loan with Washington Mutual, and, the Indictment was not returned until April 30, 2008.

e.    On or about December 3, 2014, Parker filed his *Defendant's Response to Plaintiff's Motion for Final Summary Judgment* wherein Parker clearly stated that Fidelity's pleadings are not grounded in fact, are untrue, contain materially false statements, and Heine's Affidavit is perjured testimony.

f.      On or about December 3, 2014, as summary judgment evidence, Parker filed an Excerpt from the Indictment that clearly evidenced that the Indictment was not even returned and filed until April 30, 2008.  This evidence negated Heine's perjured testimony that the Indictment was in existence prior to December 21, 2006.

g.      On or about December 3, 2014, as summary judgment evidence, Parker filed an Excerpt from the Government's Response to Motion Filed Pursuant to 28 USC §2255 to Vacate, Set Aside or Correct Sentence, wherein the United States District Court clearly stated that a federal grand jury had returned the Indictment on April 30, 2008, years after Heine's perjured testimony that the Indictment existed prior to December 22, 2006 as presented to this Honorable Court by Fidelity and the other Counter Defendants.

h.      On or about December 3, 2014, as summary judgment evidence, Parker filed another copy of his September 29, 2014 *Response to Motion for Summary Judgment, Request for Abatement of Proceedings and Counter-Claims Against Fidelity National Title Company* again putting Fidelity on notice that Heine's testimony was perjury and Fidelity's positions were not supported by the evidence.

i.      On or about December 3, 2014, Parker again filed his Affidavit dated July 14, 2014 wherein Parker clearly testifies that he had no actual knowledge of the Lis Pendens prior to closing the loan with Washington Mutual; and, the Indictment was not returned until April 30, 2008.

j.      On or about December 4, 2014, Parker filed his *Defendant's Supplemental Response to Plaintiff's Request for Final Summary Judgment* wherein Parker again clearly notices that Heine's testimony is perjury and Fidelity's positions are unfounded.

k.      On or about December 4, 2014, as summary judgment evidence, Parker filed the Criminal Docket Sheet relating to the subject Indictment that clearly evidenced the Indictment was not returned until April 30, 2008 [SEALED], and, was not unsealed until May 1, 2008.  The Criminal Docket Sheet further evidences that Heine's testimony was perjury and Fidelity was on full notice of the perjured testimony during these proceedings

l.      On or about April 14, 2015, Parker filed his *Defendant's Response to Plaintiff's Pending Motion for Summary Judgment and No Evidence Motion for Summary Judgment and Request for Additional Response Time* wherein Parker once again put the Court and Fidelity on notice that Heine's testimony was perjury and Fidelity's positions and representations to this Honorable Court were unfounded in fact.

m.      On or about June 9, 2015, Parker filed his *Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment Set for June 10, 2015* wherein Parker

again places this Court and Fidelity on notice that Heine's testimony was perjury and Fidelity's positions and representations to this Honorable Court were unfounded in fact.

n.      On or about August 12, 2015, Parker filed his *Second Request for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment* wherein Parker again places this Court and Fidelity on notice that Heine's testimony was perjury and Fidelity's positions and representations to this Honorable Court were unfounded in fact.

o.      On or about November 5, 2015, Parker filed his *Request for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment* wherein Parker again places this Court and Fidelity on notice that Heine's testimony was perjury and Fidelity's positions and representations to this Honorable Court were unfounded in fact.

p.      On or about February 8, 2016, Parker filed his *Defendant's Response to Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment* wherein Parker again places this Court and Fidelity on notice that Heine's testimony was perjury and Fidelity's positions and representations to this Honorable Court were unfounded in fact.

4.43    Even after being noticed at least sixteen (16) times that the testimony of Shawn Heine, in-house counsel for Fidelity was perjured testimony, Fidelity and its counsel, Tramaine Y. Scott, a duly licensed attorney in the State of Texas and an Officer of the Court, still presented the perjured testimony of Shawn Heine in support of Fidelity's motions for summary judgment. Parker's summary judgment evidence clearly evidences that Shawn Heine's Affidavit contained material false and fraudulent statements of alleged facts that the Court stated in its Order "***proved***" Fidelity was entitled to damages and a judgment against Parker. The false and fraudulent testimony of Shawn Heine was the basis for this Honorable Court granting summary judgment in favor of Fidelity. Shawn Heine committed perjury to assist Fidelity in fraudulently obtaining a judgment against Parker for $1,500,000.00 plus attorney fees, costs, pre-judgment interest and post-judgment interest.

4.44    Tramaine Y. Scott, Texas Bar Card Number 24060581, a duly licensed attorney in the State of Texas, is an Officer of the Court and employee of Fidelity at all relevant times.

Tramaine Y. Scott presented the perjured testimony of Shawn Heine to this Honorable Court in support of Fidelity's requests for summary judgment. On at least sixteen (16) occasions, Tramaine Y. Scott was made fully aware that the testimony of Shawn Heine was fraudulent, false and without basis in fact. However, Tramaine Y. Scott on behalf of Fidelity proceeded with misleading this Honorable Court as to the truth and assisted Shawn Heine in committing perjury in this matter for the benefit of Fidelity.   Egregiously, even with knowledge that Shawn Heine's perjury in his Affidavit had been exposed, Tramaine Y. Scott proceeded on behalf of Fidelity representing to the Court that Parker had committed actual fraud on Fidelity.

**E.**    **Fidelity intentionally misrepresented the law of the State of Texas relating to statutory fraud to this Honorable Court to obtain an unlawful judgment in excess of $1,500,000.00 against Parker**

4.45    The Texas Supreme Court long ago established that a title company does not have a statutory fraud claim under Texas Business and Commerce Code §27.01. *American Title Insurance Company v. Byrd*, 384 S.W.2d 683, 685-686 (Tex. 1964); *Satterwhite v. Safeco Land Title of Tarrant*, 853S.W.2d 202, 205 (Tex. App. – 1993, rehearing overruled).

4.46    However, Fidelity represented and argued to this Honorable Court that Fidelity was entitled under the laws of the State of Texas to a recovery for statutory fraud pursuant to Texas Business and Commerce Code §27.01.

4.47    Fidelity obtained a judgment in excess of $1,500,000.00 against Parker by erroneously representing to this Honorable Court that the laws of the State of Texas gave Fidelity a cause of action against Parker for statutory fraud pursuant to Texas Business and Commerce Code §27.01.

**F.**    **Fidelity provided further evidence that Fidelity statements to the Court to obtain its judgments against Parker were false**

4.48    The summary judgment evidence Fidelity and Counter Defendants submitted to the Court further proves that Parker had no actual knowledge that Wildwood was encumbered at the time he entered into the Home Equity Loan with Chase in opposite to Fidelities representations to this Court.

4.49    On December 22, 2006, Parker represented that he had no knowledge that Wildwood was "encumbered except by easement, reservations, and restrictions of record not inconsistent with the intended use of the Property . . ."

4.50    Pursuant to the Texas Home Equity Line of Credit Security Instrument, for Fidelity to obtain a judgment against Parker, Parker must have obtained the line of credit by "**actual fraud**".

4.51    To prove actual fraud, Fidelity had the burden to prove that on December 22, 2006, when Parker entered into the Texas Home Equity Line of Credit Security Instrument, Parker:

        1.    Made a material misrepresentation which was false,

        2.    Was either known to be false when made or was asserted without knowledge of its truth,

        3.    Which was intended to be acted upon,

        4.    Which was relied upon, and,

        5.    Which caused injury.

*Zorrilla v. Aypco Construction* II, LLC, 469 S.W. 3d 143, 153 (Tex. 2015).

4.52    At summary judgment, Fidelity relied upon documents in its attempt to prove that on December 22, 2006, Parker had actual knowledge that there was any encumbrance on Wildwood.

4.53    First, a review of The Order to Post Notice of Complaint for Forfeiture and For Publication, fails to prove that Parker was given any notice of entry of the Order.   The Order does not state that Parker was a party or participated in the Government's Verified Complaint for Forfeiture or was even present at any hearing relating to entry of the Order to Post Notice of Complaint for Forfeiture and for Publication. The Order is nothing more than instructions regarding how the Notice of Complaint for Forfeiture was to be posted. The Order to Post Notice of Complaint for Forfeiture and For Publication does not prove that any notice was given to Parker or that Parker had actual knowledge of the Order to Post Notice of Complaint for Forfeiture and For Publication. The Order to Post Notice of Complaint for Forfeiture and For Publication fails to prove that Parker had any actual notice of the Order to Post Notice of Complaint for Forfeiture and is not competent summary judgment evidence to prove Parker committed actual fraud on Fidelity.

4.54    Additionally, and of particular importance at summary judgment, a review of Fidelity's Proof of Service on Forfeiture specifically proves that Parker was *not* given actual notice of the Government's Order to Post Notice of Complaint for Forfeiture and Publication. Proof of Service on Forfeiture specifically states that a Notice of Lis Pendens was served on the County Clerk of Deed Records, Bexar County, Texas.   Further review evidences that the US Marshall or Deputy specifically did not serve any individual with the Notice of Lis Pendens. Fidelity's Proof of Service on Forfeiture wholly fails to prove that Parker had any actual notice of the Order to Post Notice of Complaint for Forfeiture and is not competent summary judgment evidence to prove Parker committed actual fraud on Fidelity.

4.55    Further, review of the Order to Post Notice of Complaint for Forfeiture and For Publication evidences that the name "Andrew Maxwell Parker" is not even shown on the face of the document.   The Order to Post Notice of Complaint for Forfeiture and For Publication had

absolutely nothing to do with "Andrew Maxwell Parker" and is not competent summary judgment evidence to prove Parker committed actual fraud on Fidelity.

4.56    Neither Order to Post Notice of Complaint for Forfeiture and For Publication, or, Order to Post Notice of Complaint for Forfeiture and Proof of Service on Forfeiture prove that Parker was given any actual notice of the Complaint for Forfeiture or a Lis Pendens relating to Wildwood.

G.    **Fidelity provided further evidence that Fidelity's claim to this Court that Parker made negligent misrepresentations to Fidelity was known to be false by Fidelity.**

14.57  In its Motion for Traditional and No Evidence Motion for Final Summary Judgment, it appears that Fidelity relied upon its Texas Home Equity Line of Credit Security Instrument and Home Equity Affidavit and Agreement, Criminal Indictment, Verified Complaint for Forfeiture, Forfeiture Order, Order to Post Notice of Complaint for Forfeiture and For Publication, and Proof of Service on Forfeiture in its nefarious but failed attempt to prove *as a matter of law* Parker had "actual knowledge" of Fidelity's contentions herein and Parker made negligent misrepresentations to Fidelity on December 22, 2006.

4.58    The Texas Home Equity Line of Credit Security Instrument evidences Parker represented that his actual knowledge on December 22, 2006, was that Wildwood was "unencumbered except by easement, reservations, and restrictions of record not inconsistent with the intended of [Wildwood]".

4.59    The Texas Home Equity Line of Credit Security Instrument evidences that Fidelity guaranteed that Parker would have no liability under contract unless Parker had obtained the Extension of Credit by "actual fraud".

4.60    The criminal indictment evidences that the Indictment was returned "SEALED" on April 30, 2008, approximately two (2) years after Parker and Fidelity entered into the Texas Home

*Defendant's Amended Counterclaim*                                                                                  **Page 26**

Equity Line of Credit Security Instrument and after Parker made his representations to Fidelity on December 22, 2006. Further, it offers no evidence *as a matter of law* that Parker had any actual knowledge on December 22, 2006 of an Indictment that did not even exist until April 30, 2008 and was not "UNSEALED" until May 1, 2008.

4.61    Fidelity's proffered civil Verified Complaint for Forfeiture was filed against Wildwood on or about December 6, 2006. However, the Verified Complaint for Forfeiture does not name Parker as a party, nor does it show that Parker was served with the pleading. Moreover, the Verified Complaint for Forfeiture specifically states that it was a "SEALED" pleading. By its own Exhibit, Fidelity proves that Parker could not have known of the Verified Complaint for Forfeiture on December 22, 2006. The very face of the Verified Complaint for Forfeiture offers no evidence *as a matter of law* that Parker had any actual knowledge on December 22, 2006 of the Verified Complaint for Forfeiture

4.62    Fidelity's proffered Forfeiture Order evidences that on or about May 8, 2009, approximately three (3) years *after* Parker made representations to Fidelity, that an order was entered finding that JPMorgan Chase filed its Lis Pendens against Wildwood after the government had filed its Lis Pendens against Wildwood.   The only relevant issue evidenced by the Forfeiture Order is that Fidelity failed to exercise due diligence and failed to locate the government's Lis Pendens prior to issuing the Title Policy in favor of JP Morgan Chase. The Forfeiture Order offers no evidence *as a matter of law* that Parker had any actual knowledge on December 22, 2006 of a court's Order not even rendered or signed until May 8, 2009.

4.63    Fidelity's proffered Order to Post Notice of Complaint for Forfeiture and For Publication evidences that a court entered an Order giving instruction to post a notice of complaint for forfeiture and for publication. The Order to Post Notice of Complaint for Forfeiture and For

Publication does not evidence that Parker was served or noticed of the Order. Further, the Order to Post Notice of Complaint for Forfeiture and For Publication evidences that Parker was not a party to the subject proceeding and had no interest in the proceeding. In fact, Parker's name does not even appear on the face of the Order to Post Notice of Complaint for Forfeiture and For Publication. The Order to Post Notice of Complaint for Forfeiture and For Publication offers no evidence *as a matter of law* that Parker had any actual knowledge on December 22, 2006 of an Order that was signed on December 11, 2006.

4.64    The government's Lis Pendens evidences that the Lis Pendens was filed on Wildwood on or about December 19, 2006. However, the government's Lis Pendens specifically evidences that the Lis Pendens and notice of its filing was served on "County Clerk of Deed Records, Bexar County". The government's Lis Pendens does not evidence that Parker was given any notice of the Lis Pendens. The government's Lis Pendens does not evidence that Parker had any knowledge of the Lis Pendens on December 22, 2006. Moreover, the government's Lis Pendens offers no evidence *as a matter of law* that Parker had any actual knowledge on December 22, 2006 of any Lis Pendens filed against Wildwood.

4.65    The face of Parker's indictment submitted by Fidelity and advanced by Counter Defendants in the original Petition on April 2, 2012 and First Amended Original Petition has a large "08" on the face clearly stating the year the indictment was brought against Parker in contrast to the filings and affidavits of Fidelity. Fidelity and Counter Defendants were on actual notice from their filings, prior to their filings Parker was indicted in 08' and not in 2000, yet Fidelity and Counter Defendants still proceeded to file perjurious flings, affidavits of officers of the court and secure two (2) judgments against Parker for (1) $1,500,000.00 plus attorney fees, costs and

interest; and, (2) judgment for $1,500,000.00 plus attorney fees, costs, pre-judgment interest and post-judgment interest for a total of well over $3,000,000.00.

4.66    By December 3, 2014 at the latest, Fidelity and Counter Defendants were on actual notice that the affidavits by Shawn Heine and all filings by its counsel, officers of the court were false. Yet, Fidelity proceeded to secure two (2) judgments against Parker for (1) $1,500,000.00 plus attorney fees, costs, pre-judgment interest and post-judgment interest; and, (2) judgment for $1,500,000.00 plus attorney fees, costs, pre-judgment interest and post-judgment interest for a total of well over $3,000,000.00. Both judgments are based on the perjury in documents and in court filings supported by sworn affidavits by officers of the court, employees of Fideltiy, that Parker was indicted in 2000 when in-fact from the very the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008.

4.67    Fidelity and Counter Defendants still today seek $1,500,000.00 plus attorney fees, costs, pre-judgment interest and post-judgment interest from Parker based on perjurious filings.

4.68    Fidelity's actions are evidence of Fidelity and Counter Defendants' years of intentional fraud, statutory fraud, breach of the contract between Fidelity and Parker, and, repeatedly, intentionally and knowingly inflicting emotional distress and mental anguish on Parker.

**H.    This Court's award of sanctions and striking Shawn Heine's affidavit support Parker's claim against Fidelity for its repeated fraud, statutory fraud, breach of contract, breach of fiduciary duty, and intentional infliction of emotional distress.**

4.69    On January 25, 2017, this Honorable Court entered its *Order Granting Andrew Maxwell Parker's Motion for Sanctions* based on Fidelity's actions in this matter described more fully above.   The Court ordered Fidelity to pay $25,000.00 in sanctions directly to Parker.

4.70    On March 7, 2017, this Honorable Court upheld the sanctions award of $25,000.00 to Parker.

4.71    On March 8, 2017, this Honorable Court again upheld the sanctions award of $25,000.00 to Parker.

4.72    On September 20, 2017, this Honorable Court denied *Fidelity's First Amended Motion for Reconsideration Relating to the Court's March 8, 2017 Second Amended Order Granting Andrew Maxwell Parker's Motion for Sanctions.* This Honorable again upheld and affirmed the $25,000.00 sanction against Fidelity.

4.73    On or about March 7, 2017, this Honorable Court entered its Amended Sanctions order and made a specific FINDING that Fidelity did not have a cause of action against Parker pursuant to Tex. Bus. & Com. Code §27.01.

4.74    The Order further states that the Court FINDS that "Fidelity unlawfully filed suit Against Andrew Maxwell Parker for statutory fraud pursuant to Texas Business and Commerce Clause §27.01".

4.75    Both the Orders dated March 7, 2017 and March 8, 2017, respectfully, struck the Affidavit of Shawn Heine, Counsel for Fidelity, from the Record of this cause of action.

## V.
## PARKER CAUSES OF ACTION

5.1    Parker incorporates herein all above stated procedural history, factual history, cited case law and the Record in these causes of action as though re-stated in full. Parker brings all causes of actions and claims against the Counter Defendants[4]:

---

[4] To be sure, Counter Defendants named herein refer to: Fidelity National Financial, Inc., Fidelity National Title Insurance Company, Jonathan J. Cunningham, Gregory Brewer, Tramaine Y. Scott, Shawn Heine, Amy Miles, Sherry Finley, Christina Johnson, Chris Fredericks, John M. Ledyard, Cale O'Brien, and all persons known and unknown who acted in concert or assisted in any cause of action named herein.

*Defendant's Amended Counterclaim*                                                                    *Page 30*

    a.  Fidelity as Fidelity,

    b.  Fidelity's attorney's acting on behalf and in concert with Fidelity,

    c.  Fidelity as Chase in the subrogation capacity as Chase, and,

    d.  Fidelity's attorneys acting on behalf and in concert with Fidelity in the subrogation capacity as Chase.

5.2    Parker's counterclaims and causes of action against Counter Defendants:

    A.    Fraud

    B.    Statutory fraud

    C.    Breach of Contract

    D.    Intentional infliction of emotional distress

    E.    Negligence

    F.    Fraudulent Inducement

    G.    Negligent Misrepresentation

    H.    Civil RICO

    I.    Civil Conspiracy

**a.**    **Parker's cause of action for fraud**

5.3    The elements for a cause of action for fraud are:

    1.    The defendant made a representation to the plaintiff.

    2.    The representation was material.

    3.    The representation was false.

    4.    When the defendant made the representation, the defendant;

        a.  Knew the representation was false, or,

b.  Made the representation recklessly, as a positive assertion, and

without knowledge of its truth.

5.    The defendant made the representation with the intent that the plaintiff act

on it.

6.    The plaintiff relied on the representation.

7.    The representation caused the plaintiff injury.

5.4    ***Italian Cowboy Partners v. Prudential Ins.***, 341 S.W.3d 323, 337 (Tex. 2011). A

fraud cause of action requires "a material misrepresentation, which was false, and which was either

known to be false when made or was asserted without knowledge of its truth, which was intended

to    be    acted    upon,    which    was    relied    upon,    and    which    caused    injury."

***Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex.1994).**

5.5    As stated more fully herein above, in support of his cause of action for fraud against

Fidelity and the other Counter Defendants, all employees of Fidelity and acting in concert, Parker

presents the Record and his summary judgment evidence to prove that Fidelity and the other

Counter Defendants, all employees of Fidelity and acting in concert, committed fraud against

Parker for which Parker hereby sues.

5.6    Fidelity represented to Parker that Fidelity would be diligent and professional in

providing an accurate title policy.

5.7    Fidelity did not provide an accurate title policy, but rather, represented the title

policy was true and correct recklessly, as a positive assertion, and with knowledge of its false

statements.

5.8    Fidelity made a false representation of fact that the title policy was accurate

because, in fact, an encumbrance existed against 407 East Wildwood undisclosed to Parker and

Washington Mutual prior to entering into the Home Equity Line of Credit the subject of this litigation. On December 22, 2006 when Parker entered into the Home Equity Line of Credit, Parker had no knowledge of the Government's Lis Pendens placed against Wildwood.

5.9     Fidelity knew or should have known the title policy subject of this litigation was false.

5.10     Fidelity made the representation that the title policy was true and correct with the intent that Parker act upon it and secure a loan from Washington Mutual.

5.11     Parker relied on the representation from Fidelity that the title policy was true and correct and entered into a contract with Washington Mutual.

5.12     The representation by Fidelity that the title policy was true and correct caused injury to Parker in cost of litigation, loss of his home at Wildwood, judgments against Parker, time, stress, mental anguish, emotional distress, public embarrassment and ridicule, and, loss of quality of life.

5.13     Fidelity as Fidelity, Fidelity's attorney's acting on behalf of Fidelity, Fidelity

as Chase, Fidelity's attorney's acting on behalf of Fidelity in the subrogation capacity as Chase and as all the above defending Parker's counter claims represented and had a duty they would not be untruthful and make false statements in the course of dealing with Parker and as officers of the court in litigation.

5.14     Fidelity made false statements to this Court numerous times to secure judgments against Parker recklessly, as a positive assertion, and without knowledge of their truth by stating in court filings supported by sworn affidavits by officers of the court, employees of Fidelity and Counter Defendants herein, that Parker was indicted in 2000 when in-fact from the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008.

*Defendant's Amended Counterclaims*

5.15    Fidelity knew or should have known its false statements in court filings supported by sworn affidavits by officers of the court, employees of Fidelity and Counter Defendants herein, that Parker was indicted in 2000 when in-fact the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008 and their statements to this Court were false.

5.16    Fidelity was on actual notice that the affidavits by Shaw Heine and all filings by its in-house counsel who are officers of the court were false on December 3, 2014 yet proceeded to secure judgments based on the perjury in the documents and in the court filings supported by sworn affidavits by the Fidelity employees who are officers of the court that Parker was indicted in 2000 when in-fact the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008.

5.17    Fidelity made the false representation to Parker by stating in court filings supported by sworn affidavits by officers of the court who were employees of Fidelity and working behalf of Fidelity that Parker was indicted in 2000 when in-fact the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008.  The Counter Defendants made such false and misleading statements to this Honorable Court so Fidelity would obtain judgments against Parker, Parker would act upon the judgments, and Parker pay Fidelity $3,000,000.00, plus attorney fees, costs, pre-judgment interest and post-judgment interest.

5.18    Fidelity is making false representations to Parker by stating in court filings supported by sworn affidavit and filings by officers of the court whom are an employees of Fidelity and working behalf of Fidelity that Parker was indicted in 2000 when in-fact the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008.  The Counter Defendants are making such false and misleading statements to this Honorable Court so Fidelity would obtain another judgment against Parker, Parker would act upon the judgments, and

*Defendant's Amended Counterclaims*

Parker pay Fidelity $1,500,000.00, plus attorney fees, costs, pre-judgment interest and post-judgment interest.

5.19   Parker relied on the false representation from Fidelity stating in court filings that are supported by sworn affidavits by officers of the court who were employees of Fidelity and working on behalf of Fidelity that Parker was indicted in 2000 when in-fact the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008. Parker had to secure counsel to defend against Fidelity's fraud.   Parker incurred substantial cost in securing counsel to defend against Fidelity and bring the Counter Defendants' fraudulent acts to the attention of this Honorable Court.

5.20   The false representation by the Counter Defendants in court filings supported by sworn affidavits by officers of the court who were employees of Fidelity that Parker was indicted in 2000 when in-fact the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008 caused injury to Parker in cost of litigation, judgments against Parker, time, stress, mental anguish, public embarrassment and humiliation, and loss of quality of life for which Parker hereby sues.

**b.   Parker's cause of action for statutory fraud**

5.21   The elements of an action for statutory fraud are:

5.22   There was a transaction involving real estate or stock

5.23   During the transaction, the defendant:

     a.   made a false representation of fact,

     b.   made a false promise, or

     c.   benefitted by not disclosing that a third party's representation or

       promise was false.

*Defendant's Amended Counterclaims*

5.24    The false representation or promise was made for the purpose of inducing the plaintiff to enter into a contract

5.25    The reliance caused the plaintiff injury.

Tex. Bus. AND Com. CODE §27.01; *Ginn v. NCI Building Sys.*, 472 S.W. 3d 802, 823 (Tex. App. – Houston [1st Dist.] 2015, no pet.).

5.26    In support of his cause of action for statutory fraud against Fidelity and the other Counter Defendants, all employees of Fidelity and acting in concert, Parker would show:

5.27    There was a transaction involving real property located at 407 East Wildwood Drive in San Antonio, Texas, Parker's homestead.

5.28 The transaction was for a home equity line of credit wherein Fidelity was paid by Parker to provide a title policy.

5.29 Fidelity made a false representation of fact that the Title Policy was accurate when in fact it was not.

5.30             Fidelity failed to note in the Title Policy it provided for the home equity loan that an encumbrance existed against 407 East Wildwood and was covered by the insurance Parker purchased in the form of the Title Policy. This encumbrance was not disclosed to Parker and Washington Mutual prior to Parker entering into the Home Equity Line of Credit the subject of this litigation.    On December 22, 2006, when Parker entered into the Home Equity Line of Credit, Parker had no knowledge of the encumbrance to the title of Wildwood that had been filed of record in the Public Records of Bexar County for a month prior to issuance of the Title Policy.

5.31             Fidelity made a false promise that it would provide an accurate title policy.

*Defendant's Amended Counterclaims*

5.32   Fidelity made a false promise that it would defend against any existing lien against 407 East Wildwood as of January 4, 2007 but failed to do so.

5.33   Fidelity's false representation that it would provide an accurate title policy was made for the purpose of inducing Parker into a contract with Fidelity and entering into the Home Equity Loan with Washington Mutual. Parker provided consideration to Fidelity to provide the policy and Washington Mutual to provide the home equity loan to Parker.

5.34   Parker's reliance on Fidelity's false representations in the title policy caused injury to Parker in cost of litigation, loss of his home at Wildwood, judgments against Parker, time, stress, mental anguish, emotional distress, public embarrassment and humiliation, and loss of quality of life that is compounded by the perjurious filings, affidavits and unconscionable still *ongoing* acts by Fidelity and the other Counter Defendants as stated herein for which Parker hereby sues.

**c.**   **Parker's cause of action for breach of contract**

5.35   The elements for a cause of action for breach of contract are:

   1.   There is a valid, enforceable contract

   2.   The plaintiff is a proper party to sue for breach of contract

   3.   The plaintiff performed, tendered performance of, or was excused from performing its contractual obligations

   4.   The defendant breached the contract

   5.   The defendant's breach caused the plaintiff injury.

5.36   *McLaughlin, Inc. v. Northstar Drilling Techs*, 138 S.W.3d 24, 27 (Tex. App. – San Antonio 2004, no pet.)(elements 1, 3-5); *Zuniga v. Wooster Ladder Co*., 119 S.W. 3d 856, 862 (Tex. App. – San Antonio 2003, no pet.).

*Defendant's Amended Counterclaims*

*Page 37*

5.37    In support of his cause of action for breach of contract against the Counter Defendant, Parker would show:

5.38   Parker entered into a contract with Fidelity for a Title Policy

5.39   Parker performed under the contract and paid Fidelity for the Title Policy.

5.40   The contract is valid and enforceable.

5.41    Parker is a proper party to sue for breach of the contract with Fidelity.

5.42   Fidelity accepted Parker's payment as consideration.

5.43    Fidelity's obligations were to provide an accurate title policy relating to Wildwood including all court filed encumbrances and defend any defects in the title to Wildwood that existed as of January 4, 2007.

5.44   Fidelity breached its contract with Parker when Fidelity failed to perform due diligence regarding whether an encumbrance existed against Wildwood prior to entering into the Home Equity Line of Credit the subject of this litigation. On December 22, 2006 when Parker entered into the Home Equity Line of Credit, Parker had no knowledge of the encumbrance against Wildwood that had been filed of Record in the Public Records of Bexar County, Texas a month before issuance of the Title Policy.

5.45   Chase subrogated to Fidelity entered into a contract with Parker.

5.46   Fidelity further breached its contract with Parker when Fidelity failed to defend the title to Wildwood.

5.47   Fidelity further breached its contract with Parker when Fidelity failed to defend against the invalidity or unenforceability of the Lis Pendens filed against Wildwood a month before issuance of the Title Policy.

5.48   Fidelity breached its contract with Parker by suing Parker using perjurious filings.

*Defendant's Amended Counterclaims*

5.49  Fidelity breached its contract with Parker by filing false affidavits.

5.50  Fidelity breached its contract with Parker by securing judgments based on perjurious filings and false affidavits.

5.51  Fidelity breached its contract with Parker by securing an unlawful abstract of judgment and placing the Abstract of Judgment in the Public Records of Bexar County, Texas.

5.52  Fidelity breached its contract with Parker by continuing to demand millions from Parker based on its perjurious filings with this Honorable Court.

5.53  Fidelity breached its contract with Parker by continuing to demand millions based on its perjurious affidavits filed with this Honorable Court.

5.54  Fidelity's breaches of the contract with Parker by not performing pursuant to the terms of the contracted Title Policy and actions in this litigation caused injury to Parker in cost of litigation, loss of Parker's Wildwood home, judgments against Parker, time, stress, mental anguish, intentional infliction of emotional distress, sleepless nights, public embarrassment and humiliation, and loss of quality of life for which Parker hereby sues

**d.**   **Parker's cause of action for intentional infliction of emotional distress**

5.55  The elements for a cause of action for intentional infliction of emotional distress are:

    1.    The plaintiff is a person

    2.    The defendant acted intentionally or recklessly

    3.    The emotional distress suffered by the plaintiff was severe

    4.    The defendant's conduct was extreme and outrageous

    5.    The defendant's conduct proximately caused the plaintiff's emotional distress

6.      No alternative cause of action would provide a remedy for the severe

emotional distress caused by the defendant's conduct.

5.56    *Kroger Tex. LP v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006)(elements 2-5);

*Hoffman-La Roche Inc. v. Zeltwanger*, 144 SW.W.3d 438, 447 (Tex. 2004)(element 6); and,

*Haygood v. Chandler*, No. 12-02-00239-CV (Tex. App. – Tyler 2003, pet. denied (memo opinion,

10-31-2003)(elements 1-5).

5.57    In support of his cause of action for intentional infliction of emotional distress

against Fidelity and the other Counter Defendants, all employees of Fidelity and acting in concert,

Parker would show:

5.58    Parker is a person.

5.59    Fidelity acted recklessly and intentionally in failing to perform its Due Diligence

and ascertain the status of the title to Wildwood prior to issuing the Title Policy and having Parker

rely upon Fidelity's inaccurate representations of the status of the title to Wildwood before entering

into the Home Equity Loan with Washington Mutual,   and providing an inaccurate title policy

when in-fact an encumbrance existed against Wildwood prior to Parker entering into the Home

Equity Line of Credit the subject of this litigation and issuance of the Fidelity Title Policy.   On

December 22, 2006 when Parker entered into the Home Equity Line of Credit, Parker had no

knowledge of the encumbrance on the title to Wildwood that had been filed as a matter of record

in the Public Records of Bexar County, Texas a month before Fidelity's issuance of the Title

Policy.

5.60    Fidelity acted recklessly and intentionally by failing to protect and defend the title

to Parker's home.

5.61    Fidelity acted recklessly and intentionally by failing to defend against the Lis Pendens that was filed prior to January 4, 2007 and Fidelity's issuance of the Title Policy.

5.62    Fidelity acted recklessly and intentionally by failing to defend against the invalidity and unenforceability of the Lis Pendens filed against Wildwood.

5.63    Fidelity acted recklessly and intentionally by failing to defend the title to Parker's home and pay any and all costs that should have been expended to defend the title.

5.64    The Counter Defendants acting in concert acted recklessly and intentionally by making false statements to this Court numerous times to secure judgments against Parker recklessly, as a positive assertion, and without knowledge of the truth by stating in court filings supported by sworn affidavits by officers of the court who were employees of Fidelity that Parker was indicted in 2000 when in-fact the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008.

5.65    The Counter Defendants acting in concert acted recklessly and intentionally when after being placed on notice on December 4, 2014 approximately 16-times of the perjured testimony of Fidelity's in-house Counsel Shawn Heine in his Affidavit still failed to withdraw Fidelity's causes of action against Parker.

5.66    The Counter Defendants acting in concert acted recklessly and intentionally when after being placed on notice numerous times that Fidelity's in-house Counsel, Tramaine Scott, was proffering perjured testimony and false statements to the Court to obtain judgments against Parker, still failed to withdraw Fidelity's causes of action against Parker.

5.67    The Counter Defendants acting in concert acted recklessly and intentionally when they unlawfully obtained and filed in the Public Records of Bexar County an Abstract of Judgment

that was based on a non-final, interlocutory Order of the District Court that publicly announces that Parker owes Fidelity in excess of $1,500,000.00.

5.68    Upon information and belief, the Counter Defendants acting in concert continue to act recklessly and intentionally by not withdrawing Fidelity's unlawfully obtained Abstract of Judgment from the Public Records of Bexar County.

5.69    The emotional distress suffered by the Parker was severe because it has caused years of litigation and cost, the loss of Parker's home at Wildwood, the prospect of million-dollar judgments obtained through specific and deliberate fraud on the court, on-going threats of million-dollar judgments, headaches, loss of sleep, public embarrassment and humiliation, and, related health issues for which Parker hereby sues.

5.70    Fidelity's conduct was extreme and outrageous because Fidelity had a duty to provide an accurate title policy and perform pursuant to the contract. Fidelity  knew it had not performed pursuant to its contractual obligations to Parker. However, instead of acting within the legal obligations of its contract, the Counter Defendants acting in concert committed fraud on the court with perjurious attorney affidavits to secure multi-million-dollar judgments against Parker.

5.71    The Counter Defendants' reckless actions and intentional behavior is extreme and outrageous.

5.72    The Counter Defendants' conduct proximately caused Parker's severe emotional distress and no alternative cause of actin would provide a remedy for the severe emotional distress caused by the   Counter Defendants' conduct.

5.73    The Counter Defendants' reckless and intentional behavior has caused Parker to suffer severe stress, mental anguish, emotional distress, sleepless nights, headaches, public embarrassment and humiliation, and loss of quality of life for which Parker hereby sues.

*Defendant's Amended Counterclaim*                                                              *Page 42*

5.74    The Counter Defendants' conduct in providing an inaccurate title policy and fraudulent court filings are, in part, the cause of Parker's emotional distress and mental anguish for which Parker hereby sues.

5.75    No alternative cause of action would provide a remedy for the severe emotional distress caused by the Counter Defendants' conduct because Fidelity has obtained multi-million-dollar judgments against Parker based on the reckless and intentional behavior of the Counter Defendants.

**e.    Parker asserts a cause of action for Negligence**

5.76    The elements of a negligence cause of action are:

    1.   Defendant has a duty to Plaintiff.

    2.    Defendant breached that duty.

    3.   Plaintiff suffered damages proximately caused by the breach of duty.

5.77    ***Doe v. Boys Clubs of Greater Dallas, Inc.***, 907 S.W.2d 472, 477 (Tex. 1995); ***Greater Hous. Transp. Co. v. Phillips***, 801 S.W.2d 523, 525 (Tex. 1990). The components of proximate cause are cause in fact and foreseeability. ***Travis v. City of Mesquite***, 830 S.W.2d 94, 98 (Tex. 1992).

5.78    In support of his cause of action for negligence against the Counter Defendants, Parker would show:

5.79     Fidelity had a duty to Parker to provide an accurate title policy.

5.80    Fidelity was negligent in breaching its duty to Parker by not providing an accurate title policy.

5.90         The Counter Defendants, all employees of Fidelity and acting in concert, had a duty to Parker to not commit fraud and file perjurious documents in this litigation to obtain multi-million-dollar judgments against Parker.

5.91         The Counter Defendants, all employees of Fidelity and acting in concert, were negligent in breaching their duty to Parker by filing perjurious documents with sworn to false testimony with this Court to obtain multi-million-dollar judgments against Parker.

5.92         Each one of the sworn to false statements by the Counter Defendants, all employees of Fidelity and acting in concert, constitutes an independent cause of action and Parker herein pleads independently and separately as the aggregate.

5.93         The Counter Defendants, all employees of Fidelity and acting in concert, breached their duty to Parker by not withdrawing the perjurious filings with this Court even to date despite knowing of their falsity.

5.94         The proximate cause of Parker's damages and losses is the inaccurate title policy that Fidelity was negligent in not ascertaining and could have reasonably foreseen if Fidelity had properly conducted its Due Diligence in determining the true status of the title to Wildwood at the time of issuance of the Title Policy.

5.95         Further, the proximate cause of Parker's damages and losses was the failure of Fidelity/Chase to defend the title to Parker's Wildwood home pursuant to the terms of the Title Policy.

5.96         Also, the proximate cause of Parker's damages is the Counter Defendants', all employees of Fidelity and acting in concert, past and on-going perjurious court filings that upon information and belief is Fidelity's modus operndi.  Such action is

intentionally negligent because the Counter Defendants were on actual notice of the falsity and perjurious nature of the testimony and court filings but have continued pursuing judgments against Parker.

5.97   The proximate cause of Parker's damages is caused by the multiple breaches of the duty owed to Parker by the Counter Defendants and the Counter Defendants' negligence.

5.97            Fidelity had a duty through Chase Bank to provide the United States District Court with the accurate facts so that Parker would not suffer the litigation and loss of 407 East Wildwood in SA:06-cv-1066.   Fidelity breached said duty.

5.98            The U.S. Government filed a motion for summary judgment in SA:06-cv-1066 to claim a superior title to Wildwood resulting in WAMU/Chase losing its claim to Wildwood and Parker losing his Wildwood home.

5.99            Pursuant to the terms of the Title Policy, when Fidelity paid Chase $1,500,000 to   cover the Home Equity Loan that had been secured by Wildwood, Fidelity became subrogated to Chase's position and inherited any actions by Chase.

5.100            The U.S. Government's motion for summary judgment was necessarily supported by alleged facts and an affidavit by Special FBI Agent Gregory P. Pratt.

5.101            The allegations to support the government taking Wildwood were that Parker was involved in wire transfers of funds sent to Comerica Bank in San Antonio, Texas in violation of federal law.

5.102            However, there was no Comerica Bank in San Antonio, Texas at the relevant times, and therefore, the allegations of the government and FBI Special Agent Pratt were false and factually impossible.

*Defendant's Amended Counterclaim*                                                      *Page 45*

5.103            Upon information and belief, the government's allegations and the Pratt affidavit would have been dismissed if Chase/Fidelity had brought this factual impossibility to the Court's attention.

5.104            Fidelity was negligent and breached its duty to Parker through Chase to defend Parker's title to Wildwood by not presenting these factual impossibilities to the court's attention.

5.105            Parker suffered the loss of title to Wildwood in these specific proceedings because of Fidelity's/Chase's negligence.

5.106            The false filings by the U.S. government to win the motion for summary judgment were foreseeable because these are public records.

5.107            Parker suffered years of costly litigation damages from Fidelity being negligent in not providing an accurate title policy for which Parker hereby sues.

5.108            Parker suffered damages by the Counter Defendants being intentionally negligent in filing and continuing to file perjurious documents with this Court in costs of litigation, severe stress, mental anguish, emotional distress, sleepless nights, headaches, time, public embarrassment and humiliation, and loss of quality of life for which Parker hereby sues.

**f.**     **Parker asserts a cause of action for Fraudulent Inducement**

5.109   To recover on an action for fraud or fraudulent inducement, a party must prove:

1.     a material representation was made,

2.     the representation was false,

3.     when the representation was made, the speaker knew the representation was false or made it recklessly without knowledge of the truth as a positive assertion,

4.     the representation was made with the intention that it should be acted upon by the party,

5.     the party acted in reliance upon it, and

6.     the party thereby suffered injury.

5.110  *Siddiqui v. Fancy Bites, LLC,* 504 S.W.3d 349 2016, Court of Appeals of Texas, Houston (14th Dist.). WL 4036341 14-14-00384-CV.

5.111  In support of his cause of action for fraudulent inducement against Fidelity, Parker would show:

5.112   Fidelity fraudulently induced Parker into signing a contract and paying for a title policy alleging that Fidelity would defend the title to Wildwood for any encumbrances of issues with Parker's title to Wildwood prior to the date and time of issuance of the Title Policy.

5.113  Fidelity's representations were false as it failed to defend Parker's title to Wildwood pursuant to the Title Policy.

5.114  Fidelity knew its representations were false or were made recklessly without knowledge of the truth as a positive assertion.

5.115  Fidelity made the false or reckless representations with the intent that Parker would pay for the Title Policy and enter into the Home Equity Loan with Washington Mutual.

5.116  Parker acted in reliance on Fidelity's representations and paid for the Title Policy and entered into the Home Equity Loan with Washington Mutual.

5.117  The result was Parker suffered injury by losing his Wildwood home, suffering years of costly litigation, severe stress, mental anguish, emotional distress, sleepless nights, headaches, time and loss of quality of life, public humiliation and disgrace for which Parker hereby sues.

**g.    Parker asserts a cause of action for Negligent Misrepresentation.**

5.118   Negligent misrepresentation occurs when someone recklessly makes a false statement, without a reasonable belief that it is true, for the purpose of inducing you to enter into a business transaction. The Texas Supreme Court has outlined the four elements of negligent misrepresentation as:

1.   The defendant's representation to a plaintiff in the course of defendant's business or in a transaction in which the defendant had an interest;

2.   The defendant's providing false information for the guidance of others;

3.   The defendant's failure to exercise reasonable care or competence in obtaining or communicating information;

4.   The plaintiff's justifiable reliance on defendant's representation; and

5.   The defendant's negligent misrepresentation proximately causing the plaintiff's injury.

5.119   *Willis v. Marshall*, 401 S.W.3d 689 (2013), Court of Appeals of Texas, El Paso. WL 1758862 08

11-00207-CV

5.120   In support of his cause of action for negligent misrepresentation against the Counter Defendants, Parker would show:

5.121   Fidelity's business is the issuance of title policies such as the Title Policy sold to Parker; and, contracting to defend the title to properties pursuant to the terms of the title policy such as defending Parker's Wildwood title.

5.122   Fidelity provided false information to Parker, i.e. that the title to Wildwood had no encumbrances prior to the date and time of issuance of the Title Policy, to guide him to enter into the Home Equity Loan and purchase of the Title Policy from Fidelity.

5.123  Fidelity failed to exercise reasonable care or competence in obtaining or communicating when Fidelity communicated to Parker that Fidelity would perform pursuant to the Title Policy, and, the title to Wildwood had no encumbrances as of the date of issuance of the Title Policy.

5.124  Fidelity negligently misrepresented Fidelity did provide an accurate title policy.

5.125  Fidelity's false information relating to the Title Policy was intentionally made to Parker to induce Parker to rely upon and guide Parker to enter into the Home Equity Loan Contract with Washington Mutual.

5.126  Fidelity did not exercise reasonable care and due diligence in ascertaining the status of the title to Wildwood because the accurate information was public record and determining the status of the title to properties such as Wildwood is Fidelity's core business.

5.127  Parker justifiably relied on Fidelity's representations, communications and Title Policy to enter into the Home Equity Loan with Washington Mutual.

5.128  Fidelity's negligent misrepresentation of the relevant facts and how it would perform pursuant to the Title Policy proximately caused Parker's damages for which Parker now sues.

**h.**  **Parker asserts a claim of Civil RICO**

5.129  A plaintiff alleging a RICO violation must prove that the defendant(s):

    1.  through the commission of two or more acts;

    2.  which constitute a pattern of racketeering activity;

    3.  directly invests or participates in;

    4.  an enterprise which affects interstate commerce.

5.130  *Metzger v. Sebek*, 892 S.W.2d 20, 47 (Tex.App.-Houston [1st Dist.] 1994, writ denied).   Cause in fact is an essential element of every negligent or intentional tort recognized in Texas. *Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 130 (Tex.App.—Texarkana 1994, no writ). Cause in fact, which is an essential element of proximate cause, *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995), is also required in a civil RICO action. See *First Nationwide Bank v. Gelt Funding Corp.*, et al., 27 F.3d 763, 769 (2nd Cir.1994) (noting that proximate cause in civil RICO action requires (1) "but-for" causation, also known as cause-in-fact, and (2) legal or proximate cause), cert. denied, 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995). Cause in fact means that the act or omission complained of was a substantial factor in bringing about the injury, and without the act or omission, no harm would have occurred to the plaintiff. Cause in fact cannot be established by mere conjecture, guess, or speculation. It cannot be shown if the defendant's negligence did no more than furnish a condition that made the injury possible. " 'The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries .... [and] justify the conclusion that such injury was the natural and probable result thereof.' " *Hawkins v. Walvoord*, 25 S.W.3d 882, 892-893 (2000)

5.131   In support of his cause of action for civil RICO against Fidelity, Parker would show:

5.132  Fidelity has had at least eight (8) different attorneys participate in the current litigation that Parker is aware thereof. Upon information and belief, Fidelity has had multiple employees and representatives/agents participate in the current litigation against Parker. Upon information and belief, the Fidelity employees and representatives/agents are located in multiple states.

5.133   All Counter Defendants either directly participated in the actions named below, caused the actions named below or the actions were in furtherance of the scheme.

5.134   The Counter Defendants have created perjurious affidavits of attorneys.

5.135   The Counter Defendants have created sworn to court filings containing false information.

5.136   The Counter Defendants filed these perjurious affidavits and filings containing false information to secure two (2) each one and a half million ($1,500,000.00) judgments against Parker for a total of three million dollars ($3,000,000.00), plus attorney fees, costs, pre-judgment interest and post-judgment interest.

5.137   Fidelity continues to seek recovery for one and a half million dollars ($1,500,000.00), plus attorney fees, costs, pre-judgment interest and post-judgment interest from Parker utilizing false statements in filings and the unlawfully obtained Abstract of Judgment.

5.138   The perjurious affidavits and filings containing false information were filed on the internet through an electronic signal.

5.139   The electronic signal caring these filings went across state lines and were in an effort and scheme to secure judgments for millions of dollars and still are known as:

5.140   Emails from Fidelity to Kristine Arlitt, PLLC's email, Go Daddy account.

5.141   Upon information and belief, emails and mailings between Fidelity employees and representative/agents.

5.142   All emails by Fidelity personnel, known and unknown, regarding this litigation including with Chase Bank.

5.143   All signals carrying the documents listed below either in court filings or between Fidelity employees and representatives known as:

P00054     3/10/2015     MOTION FOR SUMMARY JUDGMENT
P00053     3/10/2015     LETTER TO DISTRICT CLERK

FR: TRAMAINE SCOTT

RE: SETTING ON M/F SUMMARY JUDGMENT

P00051    2/20/2015    ATTORNEY    UNAVAILABILITY    NOTICE    FILED    FOR
             TRAMAINE Y SCOTT

P00047    11/13/2014   ATTORNEY    UNAVAILABILITY    NOTICE    FILED    FOR
             TRAMAINE Y. SCOTT

T00046    10/28/2014   NON-JURY SETTING ON TRIAL ON THE MERITS

             COURT: 109 TRIAL DATE & TIME: 12/8/2014 8:30AM

P00045    10/27/2014   MOTION FOR SUMMARY JUDGMENT

             W/ATTACHED EXHIBITS AND PROPOSED ORDER

500002    10/3/2014    ABSTRACT ANDREW M PARKER        ISSUED: 10/3/2014

P00043    9/25/2014    LETTER TO DISTRICT CLERK

             RE: ENVELOPE

P00042    9/22/2014    REQUEST FOR SERVICE AND PROCESS

000002    8/18/2014    SUMMARY JUDGMENT

             (PARTIAL)

             JUDGE: GLORIA SALDANA

             VOL: 4270 PAGE: 813 PAGE COUNT: 1

P00040    7/7/2014     VAC'T NOT'C FILED FOR

             TRAMAINE SCOTT

P00039    6/23/2014    MOTION     FORPARTIAL     SUMMARY     JUDGMENT
             (TRADITIONAL)

P00038    6/19/2014    FIRST AMENDED PETITION

P00037    5/5/2014     VAC'T NOT'C FILED FOR TRAMAINE SCOTT

P00036    3/20/2014    ATTORNEY    UNAVAILABILITY    NOTICE    FILED    FOR
             TRAMAINE Y. SCOTT

P00035    12/13/2013   CERTIFIED COPY MAILED OUT OF

             ORDER DENYING PLT'S MOTION

             LORETTA RANSAW/SAE

*Defendant's Amended Counterclaim*                                    *Page 52*

RE-SEND 12-20-13

P00034      12/13/2013     LETTER TO DISTRICT CLERK/RECORDING DEPT FROM
            LORETTA RANSAW

P00033      12/6/2013      LETTER FROM 4TH COURT OF APPEALS

P00032      12/2/2013      LETTER FROM 4TH COURT OF APPEALS

P00031      11/21/2013     LETTER FROM 4TH COURT OF APPEALS

P00030      11/21/2013     LETTER TO 225TH FR FOURTH COURT OF APPEALS RE
            WRIT OF MANDAMUS AND APPENDIX

P00029      11/20/2013     LETTER

            TO 225TH FR FOURTH COURT OF APPEALS RE

            ORDER

P00027      11/20/2013     MEMORANDUM OPINION FROM 4TH COURT OF APPEALS

P00028      11/18/2013     LETTER FROM 4TH COURT OF APPEALS

P00025      11/18/2013     LETTER FROM 4TH COURT OF APPEALS

P00024      11/18/2013     LETTER FROM 4TH COURT OF APPEALS

            RE: 04-13-00799-CV

P00026      11/15/2013     FAX MEMO/LETTER RECEIVED FROM

            FOURTH COURT OF APPEALS RE ORDER


P00022      5/8/2013       MEMORANDUM OPINION FROM 4TH COURT OF APPEALS
            PETITION FOR WRIT OF MANDAMUS DENIED

P00021      5/6/2013       ORIGINAL

            LETTER TO 225TH DC FR SHERRYL FINLEY RE

            PLTFS WRIT OF MANDAMUS

P00023      5/3/2013       ORDER FROM 4TH COURT OF APPEALS

            PETITION FOR WRIT OF MANDAMUS IS

            DENIED WITHOUT PREJUDICE

P00020      5/3/2013       LETTER FROM 4TH COURT OF APPEALS TO 225TH DC RE
            ORDER

*Defendant's Amended Counterclaim*                                    *Page 53*

P00019     5/l/2013     LETTER FROM 4TH COURT OF APPEALS

RELATORS PETITION FOR WRIT OF MANDAMUS

HAS THIS DATE BEEN FILED

P00017     5/1/2013     LETTER FROM 4TH COURT OF APPEALS

TO 225TH DC RE WRIT OF MANDAMUS

P00018     4/30/2013     FAX MEMO/LETTER RECEIVED FROM

FOURTH COURT OF APPEALS RE ORDER

000001     4/23/2013     ORDER DENYING

PLTFS MOTION TO COMPEL

JUDGE: PETER SAKAI

VOL: 4029 PAGE: 3083 PAGE COUNT: 1

P00016     4/22/2013     CERTIFICATE OF DEPOSITION OF

JOHN PINCKNEY

P00015     LETTER TO DISTRICT CLERK

FROM SHERRYL FINLEY W/PROPOSED ORDER TO

COMPEL

P00014     4/2/2013     JUDGES DOCKET NOTES

NO RECORD TAKEN

T00013     3/22/2013     NON-JURY

SETTING ON M/T COMPEL

**ASSIGNED TO JUDGE SAKAI**

COURT: 109 TRIAL DATE & TIME: 4/2/2013 8:30AM

P00012     3/21/2013     MOTION TO COMPEL

OF FIDELITY NATIONAL TITLE INSURANCE

COMPANY W/PROPOSED ORDER

P0OOl1     8/14/2012     CERTIFICATE OF WRITTEN DISCOVERY

OF FIDELITY NATIONAL TITLE INSURANCE

COMPANY

| P00005 | 5/17/2012 | CERTIFICATE OF WRITTEN DISCOVERY |
| | | OF FIDELITY NATIONAL TITLE INSURANCE |
| | | COMPANY |
| S00OOl | 4/4/2012 | CITATION CERTIFIED MAIL ANDREW M PARKER |

ISSUED: 4/4/2012 RECEIVED: 4/4/2012

EXECUTED: 4/4/2012 RETURNED: 4/10/2012

| P00004 | 4/2/2012 | SERVICE ASSIGNED TO CLERK 1 |
| P00003 | 4/2/2012 | REQUEST FOR |
| | | CIT (ATTY CHANGED SRVC TO CERT MAIL) |
| P00002 | 4/2/2012 | CIVIL CASE INFORMATION SHEET |
| POOOOl | 4/2/2012 | PLAINTIFF'S ORIGINAL PETITION |

5.144    All Mailings by Fidelity in the U.S. Postal Service to Parker at a Federal Facility, to any courthouse, court of appeals, Fidelity offices or other places known or unknown in furtherance of demanding payment, depriving Parker of his property or in the scheme of obtaining payment or depriving Parker of his property known as[5]:

| P00054 | 3/10/2015 | MOTION FOR SUMMARY JUDGMENT |
| P00053 | 3/10/2015 | LETTER TO DISTRICT CLERK |
| | | FR: TRAMAINE SCOTT |
| | | RE: SETTING ON M/F SUMMARY JUDGMENT |
| P00051 | 2/20/2015 | ATTORNEY UNAVAILABILITY NOTICE FILED FOR |
| | | TRAMAINE Y SCOTT |

---

[5] "Racketeering activity" is defined in section 1961(1) in terms of a list of state and federal crimes. *See* 18 U.S.C. § 1961(1); *Bonton v. Archer Chrysler Plymouth, Inc.,* 889 F.Supp. 995, 1001 (S.D.Tex.1995). It includes acts indictable under 18 U.S.C. § 1341, relating to mail fraud. *See* 18 U.S.C. § 1961(1)(B); *Whelan,* 319 F.3d at 231. The individual acts of "racketeering activity" are usually described as the "predicate offenses." *Bonton,* 889 F.Supp. at 1001. Any act that does not fall within RICO's definition of predicate offenses is not "racketeering activity." *See Heden v. Hill,* 937 F.Supp. 1230, 1242 (S.D.Tex.1996).

*Defendant's Amended Counterclaim*                                                                 *Page 55*

P00047      11/13/2014   ATTORNEY UNAVAILABILITY NOTICE FILED FOR
            TRAMAINE Y. SCOTT

T00046      10/28/2014   NON-JURY SETTING ON TRIAL ON THE MERITS

            COURT: 109 TRIAL DATE & TIME: 12/8/2014 8:30AM

P00045      10/27/2014   MOTION FOR SUMMARY JUDGMENT

            W/ATTACHED EXHIBITS AND PROPOSED ORDER

500002      10/3/2014    ABSTRACT ANDREW M PARKER        ISSUED: 10/3/2014

P00043      9/25/2014    LETTER TO DISTRICT CLERK

            RE: ENVELOPE

P00042      9/22/2014    REQUEST FOR SERVICE AND PROCESS

000002      8/18/2014    SUMMARY JUDGMENT

            (PARTIAL)

            JUDGE: GLORIA SALDANA

            VOL: 4270 PAGE: 813 PAGE COUNT: 1

P00040      7/7/2014     VAC'T NOT'C FILED FOR

            TRAMAINE SCOTT

P00039      6/23/2014    MOTION    FORPARTIAL    SUMMARY    JUDGMENT
            (TRADITIONAL)

P00038      6/19/2014    FIRST AMENDED PETITION

P00037      5/5/2014     VAC'T NOT'C FILED FOR TRAMAINE SCOTT

P00036      3/20/2014    ATTORNEY UNAVAILABILITY NOTICE FILED FOR
            TRAMAINE Y. SCOTT

P00035      12/13/2013   CERTIFIED COPY MAILED OUT OF

            ORDER DENYING PLT'S MOTION

            LORETTA RANSAW/SAE

            RE-SEND 12-20-13

P00034      12/13/2013   LETTER TO DISTRICT CLERK/RECORDING DEPT FROM
            LORETTA RANSAW

P00033      12/6/2013    LETTER FROM 4TH COURT OF APPEALS

*Defendant's Amended Counterclaim*                                      *Page 56*

P00032      12/2/2013      LETTER FROM 4TH COURT OF APPEALS

P00031      11/21/2013     LETTER FROM 4TH COURT OF APPEALS

P00030      11/21/2013     LETTER TO 225TH FR FOURTH COURT OF APPEALS RE
            WRIT OF MANDAMUS AND APPENDIX

P00029      11/20/2013     LETTER

            TO 225TH FR FOURTH COURT OF APPEALS RE

            ORDER

P00027      11/20/2013     MEMORANDUM OPINION FROM 4TH COURT OF APPEALS

P00028      11/18/2013     LETTER FROM 4TH COURT OF APPEALS

P00025      11/18/2013     LETTER FROM 4TH COURT OF APPEALS

P00024      11/18/2013     LETTER FROM 4TH COURT OF APPEALS

            RE: 04-13-00799-CV

P00026      11/15/2013     FAX MEMO/LETTER RECEIVED FROM

            FOURTH COURT OF APPEALS RE ORDER


P00022      5/8/2013       MEMORANDUM OPINION FROM 4TH COURT OF APPEALS
            PETITION FOR WRIT OF MANDAMUS DENIED

P00021      5/6/2013       ORIGINAL

            LETTER TO 225TH DC FR SHERRYL FINLEY RE

            PLTFS WRIT OF MANDAMUS

P00023      5/3/2013       ORDER FROM 4TH COURT OF APPEALS

            PETITION FOR WRIT OF MANDAMUS IS

            DENIED WITHOUT PREJUDICE

P00020      5/3/2013       LETTER FROM 4TH COURT OF APPEALS TO 225TH DC RE
            ORDER

P00019      5/1/2013       LETTER FROM 4TH COURT OF APPEALS

            RELATORS PETITION FOR WRIT OF MANDAMUS

            HAS THIS DATE BEEN FILED

P00017      5/1/2013       LETTER FROM 4TH COURT OF APPEALS

TO 225TH DC RE WRIT OF MANDAMUS

P00018     4/30/2013     FAX MEMO/LETTER RECEIVED FROM

FOURTH COURT OF APPEALS RE ORDER

000001     4/23/2013     ORDER DENYING

PLTFS MOTION TO COMPEL

JUDGE: PETER SAKAI

VOL: 4029 PAGE: 3083 PAGE COUNT: 1

P00016     4/22/2013     CERTIFICATE OF DEPOSITION OF

JOHN PINCKNEY

P00015     LETTER TO DISTRICT CLERK

FROM SHERRYL FINLEY W/PROPOSED ORDER TO

COMPEL

P00014     4/2/2013     JUDGES DOCKET NOTES

NO RECORD TAKEN

T00013     3/22/2013     NON-JURY

SETTING ON M/T COMPEL

**ASSIGNED TO JUDGE SAKAI**

COURT: 109 TRIAL DATE & TIME: 4/2/2013 8:30AM

P00012     3/21/2013     MOTION TO COMPEL

OF FIDELITY NATIONAL TITLE INSURANCE

COMPANY W/PROPOSED ORDER

P0OOI 1     8/14/2012     CERTIFICATE OF WRITTEN DISCOVERY

OF FIDELITY NATIONAL TITLE INSURANCE

COMPANY

P00005     5/17/2012     CERTIFICATE OF WRITTEN DISCOVERY

OF FIDELITY NATIONAL TITLE INSURANCE

COMPANY

S00OOl     4/4/2012     CITATION CERTIFIED MAIL ANDREW M PARKER

ISSUED: 4/4/2012 RECEIVED: 4/4/2012

              EXECUTED: 4/4/2012 RETURNED: 4/10/2012

| P00004 | 4/2/2012 | SERVICE ASSIGNED TO CLERK 1 |
| P00003 | 4/2/2012 | REQUEST FOR |

              CIT (ATTY CHANGED SRVC TO CERT MAIL)

| P00002 | 4/2/2012 | CIVIL CASE INFORMATION SHEET |
| POOO0I | 4/2/2012 | PLAINTIFF'S ORIGINAL PETITION |

     5.145 The filings, emails and phone calls affect intrastate and/or interstate commerce because they cross a state line.

     5.146   Upon information and belief, the substance of the perjurious affidavits and filings containing false information were discussed between various attorneys, Fidelity employees, representative/agents and offices of Fidelity both in Texas, Nebraska and California.

     5.147   The wire signals carrying these conversations crossed state lines.

     5.148   All Fidelity attorneys that made appearances at the Bexar County Courthouse for hearings in these proceedings have participated in the litigation and therefore are named herein as supporting actors for Parker's civil RICO claim.

     5.149   All Fidelity attorneys that assisted or reviewed the pleadings in any capacity have participated in the referenced litigation therefore are named herein as supporting actors for Parker's civil RICO claim whether known or unknown at this juncture but will be revealed in Discovery.

     5.150   All Fidelity personnel in all Fidelity offices in any capacity have participated in the referenced litigation therefore are named herein as supporting actors for Parker's civil RICO claim whether known or unknown at this juncture.

     5.151   The attorneys attending the hearings in the Bexar County Courthouse charged their plane tickets on credit cards in furtherance of the conspiracy and scheme.

5.152   The charges for the plane tickets were cleared on the Federal Reserve's ACH debit system as a debit/credit for participating members.

5.153   The signal requesting the debit and advising of the credit on the Federal Reserve's ACH system crossed a state line.

5.514   The signal for the ACH debit or credit for the credit card charges to purchase tickets for any Fidelity affiliated persons to come to San Antonio to further the RICO scheme alleged herein to secure judgments and also for the litigation against Parker by Fidelity affected interstate commerce.

5.156   Parker incurred damages proximately caused by the Counter Defendants violations of the RICO statutes that allow recovery of treble damages for which Parker now sues.

## VI.
## CIVIL CONSPIRACY

6.1     All Civil Conspiracy actions below incorporate the above, the Record, and Parker's summary judgment evidence as though fully stated herein.

6.2     "Conspiracy is a derivative tort requiring an unlawful means or purpose, which may include an underlying tort." *Chu v. Hong*, 249 S.W.3d 441, 444 (Tex.2008).

### i.     Parker's cause of action for Civil Conspiracy to Commit Fraud

6.2     The elements for a cause of action for Civil Conspiracy to Commit Fraud is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means:

1.     The defendants made a representation to the plaintiff

2.     The representation was material

3.     The representation was false

4.     When the defendants made the representation, the defendants

*Defendant's Amended Counterclaim*                                                                                      *Page 60*

        a.  Knew the representation was false, or,

        b.  Made the representation recklessly, as a positive assertion, and without knowledge of its truth.

5.     The defendants made the representation with the intent that the plaintiff act on it

6.     The plaintiff relied on the representation

7.     The representation caused the plaintiff injury

6.3   ***Italian Cowboy Partners v. Prudential Ins.***, 341 S.W.3d 323, 337 (Tex. 2011). A fraud cause of action requires "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." ***Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex.1994)**. However, "[a]n attorney who personally ... tells lies on a client's behalf may be liable for ... fraud in some cases." ***Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008)**.

6.4    In support of his cause of action for fraud, the Counter Defendants conspired to commit fraud against Parker for which Parker hereby sues.

6.5    Parker would show:

6.6    Fidelity represented to Parker that Fidelity would be diligent and professional in providing an accurate title policy.

6.7    Fidelity did not provide an accurate title policy, but rather, represented the title policy was true and correct recklessly, as a positive assertion, and with knowledge of its false statements.

6.8  Fidelity made a false representation of fact that the title policy was accurate

because, in fact, an encumbrance existed against 407 East Wildwood undisclosed to Parker and Washington Mutual prior to entering into the Home Equity Line of Credit the subject of this litigation. On December 22, 2006 when Parker entered into the Home Equity Line of Credit, Parker had no knowledge of the Government's Lis Pendens placed against Wildwood.

6.9    Fidelity knew or should have known the title policy subject of this litigation was false.

6.10    Fidelity made the representation that the title policy was true and correct with the intent that Parker act upon it and secure a loan from Washington Mutual.

6.11    Parker relied on the representation from Fidelity that the title policy was true and correct and entered into a contract with Washington Mutual.

6.12    The representation by Fidelity that the title policy was true and correct caused injury to Parker in cost of litigation, loss of his home at Wildwood, judgments against Parker, time, stress, mental anguish, emotional distress, and loss of quality of life.

6.13    Fidelity as Fidelity, Fidelity's attorney's acting on behalf of Fidelity, Fidelity as Chase, Fidelity's attorney's acting on behalf of Fidelity in the subrogation capacity as Chase and as all the above defending Parker's counter claims represented and had a duty it would not be untruthful and make false statements in the course of dealing with Parker and as officers of the court in litigation.

6.14    Fidelity made false statements to this Court numerous times to secure judgments against Parker recklessly, as a positive assertion, and without knowledge of its truth by stating in court filings supported by sworn affidavits by officers of the court that Parker was indicted in 2000

when in-fact from the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008.

6.15  Fidelity knew or should have known its false statements in court filings supported by sworn affidavits by officers of the court, employees of Fidelity, that Parker was indicted in 2000 when in-fact the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008 to this Court were false.

6.16  Fidelity was on actual notice that the affidavits by Shaw Heine and all filings by its in-house counsel who are officers of the court were false on December 3, 2014 yet proceeded to secure judgments based on the perjury in all documents, in all court filings supported by sworn affidavits by the Fidelity employees who are officers of the court that Parker was indicted in 2000 when in-fact the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008 to this Court were false.

6.17  Fidelity made the false representation to Parker by stating in court filings supported by sworn affidavits by officers of the court who were employees of Fidelity and working behalf of Fidelity that Parker was indicted in 2000 when in-fact the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008. The Counter Defendants made such false and misleading statements to this Honorable Court, so Fidelity would obtain judgments against Parker, Parker would act upon the judgments and pay Fidelity over $3,000,000.00.

6.18  Parker relied on the false representation from Fidelity stating in court filings that are supported by sworn affidavits by officers of the court who were employees of Fidelity and working on behalf of Fidelity that Parker was indicted in 2000 when in-fact the face of the record,

*Defendant's Response to Plaintiff's*
*No Evidence Motion for Final Summary Judgment*

all public records, notices and publicity undeniably state Parker was indicted in 2008, but Parker had to secure counsel to defend against Fidelity's fraud.   Parker incurred substantial cost in securing counsel to defend against Fidelity and bring the Counter Defendants' fraudulent acts to the attention of this Honorable Court.

6.19   The false representation by the Counter Defendants in court filings supported by sworn affidavits by officers of the court where were employees of Fidelity that Parker was indicted in 2000 when in-fact the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008 caused injury to Parker in cost of litigation, judgments against Parker, time, stress, mental anguish, public embarrassment and   humiliation, and loss of quality of life for which Parker hereby sues.

**j.   Parker's cause of action for conspiracy to commit statutory fraud**

6.20   Civil conspiracy to commit statutory fraud is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means of the elements of an action for statutory fraud as:

6.21   There was a transaction involving real estate or stock,

6.22   During the transaction, the defendants:

      a.   made a false representation of fact,

      b.   made a false promise, or

      c. benefitted by not disclosing that a third party's representation or promise was false.

6.23   The false representation or promise was made for the purpose of inducing the plaintiff to enter into a contract

*Defendant's Response to Plaintiff's*
*No Evidence Motion for Final Summary Judgment*

6.24   The reliance caused the plaintiff injury.

6.25   Tex. Bus. AND Com. CODE §27.01; *Ginn v. NCI Building Sys.*, 472 S.W. 3d 802, 823 (Tex. App. – Houston [1st Dist.] 2015, no pet.).

6.26  In support of his cause of action for statutory fraud against Fidelity, the Counter Defendants conspired to commit statutory fraud against Parker for which Parker hereby sues.

6.27   Parker would show:

6.28   There was a transaction involving real property located at 407 East Wildwood Drive in San Antonio, Texas, Parker's homestead.

6.29   The transaction was for a home equity line of credit wherein Fidelity was paid by Parker to provide a title policy.

6.30   Fidelity made a false representation of fact that the title policy was accurate when in fact it was not.

6.31   Fidelity failed to note in the title policy it provided for the home equity loan that an encumbrance existed against 407 East Wildwood and was covered by the insurance Parker purchased in the form of the Title Policy. This encumbrance was not disclosed to Parker and Washington Mutual prior to Parker entering into the Home Equity Line of Credit the subject of this litigation. On December 22, 2006, when Parker entered into the Home Equity Line of Credit, Parker had no knowledge of the encumbrance to the title of Wildwood that had been filed of record in the Public Records of Bexar County for a month prior to issuance of the Title Policy.

6.32   Fidelity made a false promise that it would provide an accurate title policy.

6.33    Fidelity made a false promise that it would defend against any existing lien against 407 E. East Wildwood as of January 4, 2007 but failed to do so.

6.34 Fidelity's false representation that it would provide an accurate title policy was made for the purpose of inducing Parker into a contract with Fidelity and entering into the Home Equity Loan with Washington Mutual. Parker provided consideration to Fidelity to provide the policy and Washington Mutual to provide the home equity loan to Parker.

6.35    Parker's reliance on Fidelity's false representations in the title policy caused injury to Parker in cost of litigation, loss of his home at Wildwood, judgments against Parker, time, stress, mental anguish, emotional distress, public embarrassment and humiliation, and loss of quality of life that is compounded by the perjurious filings, affidavits and unconscionable *ongoing* acts by Fidelity and the other Counter Defendants as stated herein for which Parker hereby sues.

**k.**    **Parker's cause of action for conspiracy to commit breach of contract**

6.36    The elements for a cause of action for conspiracy to breach of contract is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose as:

1.    There is a valid, enforceable contract

2.    The plaintiff is a proper party to sue for breach of contract

3.    The plaintiff performed, tendered performance of, or was excused from performing its contractual obligations

4.    The defendant breached the contract

5.    The defendant's breach caused the plaintiff injury.

6.37   *McLaughlin, Inc. v. Northstar Drilling Techs*, 138 S.W.3d 24, 27 (Tex. App. –

San Antonio 2004, no pet.)(elements 1, 3-5); *Zuniga v. Wooster Ladder Co.*, 119 S.W. 3d 856,

862 (Tex. App. – San Antonio 2003, no pet.).

6.38   In support of his cause of action for breach of contract, the Counter Defendants

conspired to commit breach of contract against Parker for which Parker hereby sues:

6.39   Parker would show.

6.40   Parker entered into a contract with Fidelity for a Title Policy

6.41   Parker performed under the contract and paid Fidelity for the Title Policy.

6.42   The contract is valid and enforceable.

6.43   Parker is a proper party to sue for breach of the contract with Fidelity.

6.44   Fidelity accepted Parker's payment as consideration.

6.41   Fidelity's obligations were to provide an accurate title policy relating to Wildwood

including all court filed encumbrances and defend any defects in the title to Wildwood that

existed as of January 4, 2007.

6.42   Fidelity breached its contract with Parker when Fidelity failed to perform due

diligence regarding whether an encumbrance existed against Wildwood prior to entering into the

Home Equity Line of Credit the subject of this litigation. On December 22, 2006 when Parker

entered into the Home Equity Line of Credit, Parker had no knowledge of the encumbrance against

Wildwood that had been filed of Record in the Public Records of Bexar County, Texas a month

before issuance of the Title Policy.

6.43   Chase subrogated to Fidelity entered into a contract with Parker.

6.44   Fidelity further breached its contract with Parker when Fidelity failed to defend the

title to Wildwood.

6.45 Fidelity further breached its contract with Parker when Fidelity failed to defend against the invalidity or unenforceability of the Lis Pendens filed against Wildwood a month before issuance of the Title Policy.

6.46 Fidelity breached its contract with Parker by suing Parker using perjurious filings.

6.47 Fidelity breached its contract with Parker by filing false affidavits.

6.48 Fidelity breached its contract with Parker by securing judgments based on perjurious filings and false affidavits.

6.49 Fidelity breached its contract with Parker by securing an unlawful abstract of judgment and placing the Abstract of Judgment in the Public Records of Bexar County, Texas.

6.50 Fidelity breached its contract with Parker by continuing to demand millions from Parker based on its perjurious filings with this Honorable Court.

6.51 Fidelity breached its contract with Parker by continuing to demand millions based on its perjurious affidavits filed with this Honorable Court.

6.52 Fidelity's breaches of the contract with Parker by not performing pursuant to the terms of the contracted Title Policy and actions in this litigation caused injury to Parker in cost of litigation, loss of Parker's Wildwood home, judgments against Parker, time, stress, mental anguish, intentional infliction of emotional distress, sleepless nights, and loss of quality of life for which Parker hereby sues.

6.53 Counter Defendant's acted in concert to file all stated documents herein to support Fidelity's Breach of Contract.

6.54 Counter Defendants acted in concert to herein to conspire to support Fidelity's

Breach of Contract and is the proximate cause of Parker's damages for which Parker now sues.

I.      **Parker's cause of action for conspiracy to intentional infliction of emotional distress**

6.55    The elements for a cause of action for intentional infliction of emotional distress is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means as:

1.      The plaintiff is a person,

2.      The defendants acted intentionally or recklessly,

3.      The emotional distress suffered by the plaintiff was severe,

4.      The defendants' conduct was extreme and outrageous,

5.      The defendants' conduct proximately caused the plaintiff's emotional distress,

6.      No alternative cause of action would provide a remedy for the severe emotional distress caused by the defendants' conduct.

6.57    *Kroger Tex. LP v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006)(elements 2-5); *Hoffman-La Roche Inc. v. Zeltwanger*, 144 SW.W.3d 438, 447 (Tex. 2004)(element 6); and, *Haygood v. Chandler*, No. 12-02-00239-CV (Tex. App. – Tyler 2003, pet. denied (memo opinion, 10-31-2003)(elements 1-5).

6.58    In support of his cause of action for intentional infliction of emotional distress, the Counter Defendants conspired to intentionally inflict emotional distress against Parker for which Parker hereby sues.

6.59    Parker is a person.

6.60    Fidelity acted recklessly and intentionally in failing to perform its Due Diligence

and ascertain the status of the title to Wildwood prior to issuing the Title Policy and having Parker rely upon Fidelity's inaccurate representations of the status of the title to Wildwood before entering into the Home Equity Loan with Washington Mutual,   and providing an inaccurate title policy when in-fact an encumbrance existed against Wildwood prior to Parker entering into the Home Equity Line of Credit the subject of this litigation and issuance of the Fidelity Title Policy.   On December 22, 2006 when Parker entered into the Home Equity Line of Credit, Parker had no knowledge of the encumbrance on the title to Wildwood that had been filed as a matter of record in the Public Records of Bexar County, Texas a month before Fidelity's issuance of the Title Policy.

6.61    Fidelity acted recklessly and intentionally by failing to protect and defend the title to Parker's home.

6.62    Fidelity acted recklessly and intentionally by failing to defend against the Lis Pendens that was filed prior to January 4, 2007 and Fidelity's issuance of the Title Policy.

6.63    Fidelity acted recklessly and intentionally by failing to defend against the invalidity and unenforceability of the Lis Pendens filed against Wildwood.

6.64    Fidelity acted recklessly and intentionally by failing to defend the title to Parker's home and pay any and all costs that should have been expended to defend the title.

6.65    The Counter Defendants acting in concert acted recklessly and intentionally by making false statements to this Court numerous times to secure judgments against Parker recklessly, as a positive assertion, and without knowledge of the truth by stating in court filings supported by sworn affidavits by officers of the court who were employees of Fidelity that Parker was indicted in 2000 when in-fact the face of the record, all public records, notices and publicity undeniably state Parker was indicted in 2008.

*Defendant's Amended Counterclaims*                                                              *Page 70*

6.66    The Counter Defendants acting in concert acted recklessly and intentionally when after being placed on notice on December 4, 2014 approximately 16-times of the perjured testimony of Fidelity's in-house Counsel Shawn Heine in his Affidavit still failed to withdraw Fidelity's causes of action against Parker.

6.67    The Counter Defendants acting in concert acted recklessly and intentionally when after being placed on notice numerous times that Fidelity's in-house Counsel, Tramaine Scott, was proffering perjured testimony and false statements to the Court to obtain judgments against Parker, still failed to withdraw Fidelity's causes of action against Parker.

6.68    The Counter Defendants acting in concert acted recklessly and intentionally when they unlawfully obtained and filed in the Public Records of Bexar County an Abstract of Judgment that was based on a non-final, interlocutory Order of the District Court that publicly announces that Parker owes Fidelity in excess of $1,500,000.00.

6.69    Upon information and belief, the Counter Defendants acting in concert continue to act recklessly and intentionally by not withdrawing Fidelity's unlawfully obtained Abstract of Judgment from the Public Records of Bexar County.

6.70    The emotional distress suffered by the Parker was severe because it has caused years of litigation and cost, the loss of Parker's home at Wildwood, the prospect of million-dollar judgments obtained through specific and deliberate fraud on the court, on-going threats of million-dollar judgments, headaches, loss of sleep, public embarrassment and humiliation, and, related health issues for which Parker hereby sues.

6.71    Fidelity's conduct was extreme and outrageous because Fidelity had a duty to provide an accurate title policy and perform pursuant to the contract. Fidelity  knew it had not performed pursuant to its contractual obligations to Parker. However, instead of acting within the

legal obligations of its contract, the Counter Defendants acting in concert committed fraud on the court with perjurious attorney affidavits to secure multi-million-dollar judgments against Parker.

6.72    The Counter Defendants' reckless actions and intentional behavior is extreme and outrageous.

6.73  The Counter Defendants' reckless and intentional behavior has caused Parker to suffer severe stress, mental anguish, emotional distress, sleepless nights, headaches, and loss of quality of life for which Parker hereby sues.

6.74    Fidelity's conduct in providing an inaccurate title policy and fraudulent court filings are, in part, the cause of Parker's emotional distress and mental anguish for which Parker hereby sues.

6.75    No alternative cause of action would provide a remedy for the severe emotional distress caused by the Counter Defendants' conduct because Fidelity would have multi-million-dollar judgments against Parker based on the reckless and intentional behavior of the Counter Defendants in conspiring to intentionally inflict severe emotional distress upon Parker for which Parker hereby now sues.

**m.**    **Parker asserts a cause of action for Conspiracy for Negligence**

6.76    The elements of a conspiracy for negligence cause of action are civil conspiracy wherein a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means as:

    4.   Defendant has a duty to Plaintiff.

    5.   Defendant breached that duty.

    6.   Plaintiff suffered damages proximately caused by the breach of duty.

6.77    See *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995); *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The components of proximate cause are cause in fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992).

6.78    In support of his cause of action to commit negligence, the Counter Defendants conspired to commit negligence against Parker for which Parker hereby sues:

In support of his cause of action for negligence against the Counter Defendants, Parker would show the Counter Defendants conspired to:

6.79    Fidelity had a duty to Parker to provide an accurate title policy.

6.80    Fidelity was negligent in breaching its duty to Parker by not providing an accurate title policy.

6.81    The Counter Defendants, all employees of Fidelity and acting in concert, had a duty to Parker to not commit fraud and file perjurious documents in this litigation to obtain multi-million-dollar judgments against Parker.

6.82    The Counter Defendants, all employees of Fidelity and acting in concert, were negligent in breaching their duty to Parker by filing perjurious documents with sworn to false testimony with this Court to obtain multi-million-dollar judgments against Parker.

6.83    Each one of the sworn to false statements by the Counter Defendants, all employees of Fidelity and acting in concert, constitutes an independent cause of action and Parker herein pleads independently and separately as the aggregate.

6.84    The Counter Defendants, all employees of Fidelity and acting in concert, breached their duty to Parker by not withdrawing the perjurious filings with this Court even to date despite knowing of their falsity.

6.85    The proximate cause of Parker's damages and losses is the inaccurate title policy that Fidelity was negligent in not ascertaining and could have reasonably foreseen if Fidelity had properly conducted its Due Diligence in determining the true status of the title to Wildwood at the time of issuance of the Title Policy.

6.86    Further, the proximate cause of Parker's damages and losses was the failure of Fidelity/Chase to defend the title to Parker's Wildwood home pursuant to the terms of the Title Policy.

6.87    Also, the proximate cause of Parker's damages is the Counter Defendants', all employees of Fidelity and acting in concert, past and on-going perjurious court filings that upon information and belief is Fidelity's modus operndi. Such action is intentionally negligent because the Counter Defendants were on actual notice of the falsity and perjurious nature of the testimony and court filings but have continued pursuing judgments against Parker.

6.87    The proximate cause of Parker's damages are caused by the multiple breaches of the duty owed to Parker by the Counter Defendants and the Counter Defendants' negligence.

6.88    Fidelity had a duty through Chase Bank to provide the United States District Court with the accurate facts so that Parker would not suffer the litigation and loss of 407 East Wildwood in SA:06-cv-1066.   Fidelity breached said duty.

6.89    The U.S. Government filed a motion for summary judgment in SA:06-cv-1066 to claim a superior title to Wildwood resulting in WAMU/Chase losing its claim to Wildwood.

6.90    Pursuant to the terms of the Title Policy, when Fidelity paid Chase $1,500,000 to cover the Home Equity Loan that had been secured by Wildwood, Fidelity became subrogated to Chase's position and inherited any actions by Chase.

6.91    The U.S. Government's motion for summary judgment was necessarily supported by alleged facts and an affidavit by Special FBI Agent Gregory P. Pratt.

6.92    The allegations to support the government taking Wildwood were that Parker was involved in wire transfers of funds sent to Comerica Bank in San Antonio, Texas in violation of federal law.

6.93    However, there was no Comerica Bank in San Antonio, Texas at the relevant times, and therefore, the allegations of the government and FBI Special Agent Pratt were false and factually impossible.

6.94    Upon information and belief, the government's allegations and the Pratt affidavit would have been dismissed if Chase/Fidelity had brought this factual impossibility to the Court's attention.

6.95    Fidelity was negligent and breached its duty to Parker through Chase to defend Parker's title to Wildwood by not presenting these factual impossibilities to the court's attention.

6.96    Parker suffered the loss of title to Wildwood in these specific proceedings because of Fidelity's/Chase's negligence.

6.97 The false filings by the U.S. government to win the motion for summary judgment were foreseeable because these are public records.

6.98    Parker suffered years of costly litigation damages from Fidelity being negligent in not providing an accurate title policy for which Parker hereby sues.

6.99    Parker suffered damages by the Counter Defendants conspiring and being intentionally negligent in filing and continuing to file perjurious documents with this Court in costs of litigation, severe stress, mental anguish, emotional distress, sleepless nights, headaches,

*Defendant's Amended Counterclaims*                                                                 *Page 75*

time, public embarrassment and humiliation, and loss of quality of life for which Parker hereby sues.

**n.**    **Parker asserts a cause of action for Conspiracy under Fraudulent Inducement**

6.100   To recover on an action for civil conspiracy to commit fraud or fraudulent inducement Parker must prove there is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means as:

6.101   a material representation was made,

6.102   the representation was false,

6.103   when the representation was made, the speaker knew the representation was false or made it recklessly without knowledge of the truth as a positive assertion,

6.104   the representation was made with the intention that it should be acted upon by the party,

6.105   the party acted in reliance upon it, and

6.106   the party thereby suffered injury.

6.107   *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349 2016, Court of Appeals of Texas, Houston (14th Dist.). WL 4036341 14-14-00384-CV.

6.108   In support of his cause of action for fraudulent inducement against Fidelity, the Counter Defendants conspired to commit fraudulent inducement against Parker for which Parker hereby sues:

Parker would show:

6.109   Fidelity fraudulently induced Parker into signing a contract and paying for a title policy alleging that Fidelity would defend the title to Wildwood for any encumbrances of issues with Parker's title to Wildwood prior to the date and time of issuance of the Title Policy.

6.110   Fidelity's representations were false as it failed to defend Parker's title to Wildwood pursuant to the Title Policy.

6.111   Fidelity knew its representations were false or were made recklessly without knowledge of the truth as a positive assertion.

6.112   Fidelity made the false or reckless representations with the intent that Parker would pay for the Title Policy and enter into the Home Equity Loan with Washington Mutual.

6.113   Parker acted in reliance on Fidelity's representations and paid for the Title Policy and entered into the Home Equity Loan with Washington Mutual.

6.114   The result was Parker suffered injury by losing his Wildwood home, suffering years of costly litigation, severe stress, mental anguish, emotional distress, sleepless nights, headaches, time and loss of quality of life, public humiliation and disgrace for which Parker hereby sues.

**o.**   **Parker asserts a cause of action for Conspiracy for Negligent Misrepresentation.**

6.115   Conspiracy for Negligent misrepresentation occurs when two or more persons acting in concert recklessly makes a false statement, without a reasonable belief that it is true, for the purpose of inducing you to enter into a business transaction. The Texas Supreme Court has outlined the four elements of negligent misrepresentation as:

1.   The defendant's representation to a plaintiff in the course of defendant's business or in a transaction in which the defendant had an interest;

2.   The defendant's providing false information for the guidance of others;

3.   The defendant's failure to exercise reasonable care or competence in obtaining or communicating information;

4.   The plaintiff's justifiable reliance on defendant's representation; and

5.   The defendant's negligent misrepresentation proximately causing the

plaintiff's injury.

6.116   ***Willis v. Marshall***, 401 S.W.3d 689 (2013), Court of Appeals of Texas, El Paso. WL 1758862 08-

11-00207-CV

6.117 In support of his cause of action for negligent misrepresentation, the Counter Defendants conspired to commit negligent misrepresentation against Parker for which Parker hereby sues.

6.118   In support of his cause of action for conspiracy to commit negligent misrepresentation against the Counter Defendants, Parker would show:

6.119   Fidelity's business is the issuance of title policies such as the Title Policy sold to Parker; and, contracting to defend the title to properties pursuant to the terms of the title policy such as defending Parker's Wildwood title.

6.120   Fidelity provided false information to Parker, i.e. that the title to Wildwood had not encumbrances prior to the date and time of issuance of the Title Policy, to guide him to enter into the Home Equity Loan and purchase of the Title Policy from Fidelity.

6.121   Fidelity failed to exercise reasonable care or competence in obtaining or communicating when Fidelity communicated to Parker that Fidelity would perform pursuant to the Title Policy, and, the title to Wildwood had no encumbrances as of the date of issuance of the Title Policy.

6.122   Fidelity negligently misrepresented Fidelity did provide an accurate title policy.

6.123   Fidelity's false information relating to the Title Policy was intentionally made to Parker to induce to rely upon and guide Parker to enter into Home Equity Loan contract with Washington Mutual.

6.124   Fidelity did not exercise reasonable care and due diligence in ascertaining the status of the title to Wildwood because the accurate information was public record and determining the status of the title to properties such as Wildwood is Fidelity's core business.

6.125   Parker justifiably relied on Fidelity's representations, communications and Title Policy to enter into the Home Equity Loan with Washington Mutual.

6.126   Fidelity's negligent misrepresentation of the relevant facts and how it would perform pursuant to the Title Policy proximately that now include Counter Defendants' on-going actions stemming from the Title Policy caused Parker's damages for which Parker now sues.

**p.   Parker asserts a claim of conspiracy to commit Civil RICO**

6.127   A plaintiff alleging a civil conspiracy to commit Civil RICO violation must prove that the defendant(s):

1.  through the commission of two or more acts;

2.  which constitute a pattern of racketeering activity;

3.  directly invests or participates in;

4.  an enterprise which affects interstate commerce.

35.2 *Metzger v. Sebek*, 892 S.W.2d 20, 47 (Tex.App.-Houston [1st Dist.] 1994, writ denied).

6.128   Cause in fact is an essential element of every negligent or intentional tort recognized in Texas. *Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 130 (Tex.App.— Texarkana 1994, no writ). Cause in fact, which is an essential element of proximate cause,

***Boys Clubs of Greater Dallas, Inc.***, 907 S.W.2d 472, 477 (Tex.1995), is also required in a civil RICO action. See ***First Nationwide Bank v. Gelt Funding Corp.***, et al., 27 F.3d 763, 769 (2nd Cir.1994) (noting that proximate cause in civil RICO action requires (1) "but-for" causation, also known as cause-in-fact, and (2) legal or proximate cause), cert. denied, 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995). Cause in fact means that the act or omission complained of was a substantial factor in bringing about the injury, and without the act or omission, no harm would have occurred to the plaintiff. Cause in fact cannot be established by mere conjecture, guess, or speculation. It cannot be shown if the defendant's negligence did no more than furnish a condition that made the injury possible. " 'The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries .... [and] justify the conclusion that such injury was the natural and probable result thereof.' " ***Hawkins v. Walvoord***, 25 S.W.3d 882, 892-893 (2000).

6.130    In support of his cause of action for civil RICO violations, the Counter Defendants conspired to commit civil RICO violations against Parker for which Parker hereby sues.

6.131    In support of his cause of action for civil RICO against Fidelity, Parker would show:

6.132    Fidelity has had at least eight (8) different attorneys participate in the current litigation that Parker is aware thereof.   Upon information and belief, Fidelity has had multiple employees and representatives/agents participate in the current litigation against Parker. Upon information and belief, the Fidelity employees and representatives/agents are located in multiple states.

6.133    All Counter Defendants either directly participated in the actions named below, caused the actions named below or the actions were in furtherance of the scheme.

6.134    The Counter Defendants have created perjurious affidavits of attorneys.

6.135   The Counter Defendants have created sworn to filings containing false information.

6.136   The Counter Defendants filed these perjurious affidavits and filings containing false information to secure two (2) each one and a half million ($1,500,000.00) judgments against Parker for a total of three million dollars ($3,000,000.00), plus attorney fees, costs, pre-judgment interest and post-judgment interest.

6.137   Fidelity continues to seek recovery for one and a half million dollars ($1,500,000.00), plus attorney fees, costs, pre-judgment interest and post-judgment interest from Parker utilizing false statements in filings and the unlawfully obtained Abstract of Judgment.

6.138   The perjurious affidavits and filings containing false information were filed on the internet through an electronic signal.

6.139   The electronic signal caring these filings went across state lines and were in an effort and scheme to secure judgments for millions of dollars and still are known as:

6.140    Emails from Fidelity to Kristine Arlitt's email, Go Daddy account.

6.141   Upon information and belief, emails and mailings between Fidelity employees and representative/agents.

6.142 All emails by Fidelity personnel, known and unknown, regarding this litigation including with Chase Bank.

6.143 All signals carrying the documents listed below either in court filings or between Fidelity employees and representatives:


P00054    3/10/2015    MOTION FOR SUMMARY JUDGMENT
P00053    3/10/2015    LETTER TO DISTRICT CLERK
              FR: TRAMAINE SCOTT
              RE: SETTING ON M/F SUMMARY JUDGMENT


*Defendant's Amended Counterclaims*                                          *Page 81*

P00051   2/20/2015   ATTORNEY UNAVAILABILITY NOTICE FILED FOR TRAMAINE Y SCOTT

P00047   11/13/2014   ATTORNEY UNAVAILABILITY NOTICE FILED FOR TRAMAINE Y. SCOTT

T00046   10/28/2014   NON-JURY SETTING ON TRIAL ON THE MERITS

COURT: 109 TRIAL DATE & TIME: 12/8/2014 8:30AM

P00045   10/27/2014   MOTION FOR SUMMARY JUDGMENT

W/ATTACHED EXHIBITS AND PROPOSED ORDER

500002   10/3/2014   ABSTRACT ANDREW M PARKER      ISSUED: 10/3/2014

P00043   9/25/2014   LETTER TO DISTRICT CLERK

RE: ENVELOPE

P00042   9/22/2014   REQUEST FOR SERVICE AND PROCESS

000002   8/18/2014   SUMMARY JUDGMENT

(PARTIAL)

JUDGE: GLORIA SALDANA

VOL: 4270 PAGE: 813 PAGE COUNT: 1

P00040   7/7/2014   VAC'T NOT'C FILED FOR

TRAMAINE SCOTT

P00039   6/23/2014   MOTION FORPARTIAL SUMMARY JUDGMENT (TRADITIONAL)

P00038   6/19/2014   FIRST AMENDED PETITION

P00037   5/5/2014   VAC'T NOT'C FILED FOR TRAMAINE SCOTT

P00036   3/20/2014   ATTORNEY UNAVAILABILITY NOTICE FILED FOR TRAMAINE Y. SCOTT

P00035   12/13/2013   CERTIFIED COPY MAILED OUT OF

ORDER DENYING PLT'S MOTION

LORETTA RANSAW/SAE

RE-SEND 12-20-13

P00034      12/13/2013     LETTER TO DISTRICT CLERK/RECORDING DEPT FROM
            LORETTA RANSAW

P00033      12/6/2013      LETTER FROM 4TH COURT OF APPEALS

P00032      12/2/2013      LETTER FROM 4TH COURT OF APPEALS

P00031      11/21/2013     LETTER FROM 4TH COURT OF APPEALS

P00030      11/21/2013     LETTER TO 225TH FR FOURTH COURT OF APPEALS RE
            WRIT OF MANDAMUS AND APPENDIX

P00029      11/20/2013     LETTER

            TO 225TH FR FOURTH COURT OF APPEALS RE

            ORDER

P00027      11/20/2013     MEMORANDUM OPINION FROM 4TH COURT OF APPEALS

P00028      11/18/2013     LETTER FROM 4TH COURT OF APPEALS

P00025      11/18/2013     LETTER FROM 4TH COURT OF APPEALS

P00024      11/18/2013     LETTER FROM 4TH COURT OF APPEALS

            RE: 04-13-00799-CV

P00026      11/15/2013     FAX MEMO/LETTER RECEIVED FROM

            FOURTH COURT OF APPEALS RE ORDER


P00022      5/8/2013       MEMORANDUM OPINION FROM 4TH COURT OF APPEALS
            PETITION FOR WRIT OF MANDAMUS DENIED

P00021      5/6/2013       ORIGINAL

            LETTER TO 225TH DC FR SHERRYL FINLEY RE

            PLTFS WRIT OF MANDAMUS

P00023      5/3/2013       ORDER FROM 4TH COURT OF APPEALS

            PETITION FOR WRIT OF MANDAMUS IS

            DENIED WITHOUT PREJUDICE

P00020      5/3/2013       LETTER FROM 4TH COURT OF APPEALS TO 225TH DC RE
            ORDER

P00019      5/1/2013       LETTER FROM 4TH COURT OF APPEALS

*Defendant's Amended Counterclaims*                                          *Page  83*

RELATORS PETITION FOR WRIT OF MANDAMUS

HAS THIS DATE BEEN FILED

P00017    5/1/2013    LETTER FROM 4TH COURT OF APPEALS

TO 225TH DC RE WRIT OF MANDAMUS

P00018    4/30/2013    FAX MEMO/LETTER RECEIVED FROM

FOURTH COURT OF APPEALS RE ORDER

000001    4/23/2013    ORDER DENYING

PLTFS MOTION TO COMPEL

JUDGE: PETER SAKAI

VOL: 4029 PAGE: 3083 PAGE COUNT: 1

P00016    4/22/2013    CERTIFICATE OF DEPOSITION OF

JOHN PINCKNEY

P00015    LETTER TO DISTRICT CLERK

FROM SHERRYL FINLEY W/PROPOSED ORDER TO

COMPEL

P00014    4/2/2013    JUDGES DOCKET NOTES

NO RECORD TAKEN

T00013    3/22/2013    NON-JURY

SETTING ON M/T COMPEL

**ASSIGNED TO JUDGE SAKAI**

COURT: 109 TRIAL DATE & TIME: 4/2/2013 8:30AM

P00012    3/21/2013    MOTION TO COMPEL

OF FIDELITY NATIONAL TITLE INSURANCE

COMPANY W/PROPOSED ORDER

P0OO11    8/14/2012    CERTIFICATE OF WRITTEN DISCOVERY

OF FIDELITY NATIONAL TITLE INSURANCE

COMPANY

P00005    5/17/2012    CERTIFICATE OF WRITTEN DISCOVERY

OF FIDELITY NATIONAL TITLE INSURANCE

COMPANY

S00OOl     4/4/2012      CITATION CERTIFIED MAIL ANDREW M PARKER

ISSUED: 4/4/2012 RECEIVED: 4/4/2012

EXECUTED: 4/4/2012 RETURNED: 4/10/2012

P00004     4/2/2012      SERVICE ASSIGNED TO CLERK l

P00003     4/2/2012      REQUEST FOR

CIT (ATTY CHANGED SRVC TO CERT MAIL)

P00002     4/2/2012      CIVIL CASE INFORMATION SHEET

POOOOl     4/2/2012      PLAINTIFF'S ORIGINAL PETITION

6.144   All Mailings by Fidelity in the U.S. Postal Service to Parker at a Federal Facility, to any courthouse, court of appeals, or Fidelity offices in furtherance of demanding payment, depriving Parker of his property or in the scheme of obtaining payment or depriving Parker of his property known as[6]:

P00054     3/10/2015     MOTION FOR SUMMARY JUDGMENT

P00053     3/10/2015     LETTER TO DISTRICT CLERK

FR: TRAMAINE SCOTT

RE: SETTING ON M/F SUMMARY JUDGMENT

P00051     2/20/2015     ATTORNEY   UNAVAILABILITY   NOTICE   FILED   FOR
TRAMAINE Y SCOTT

P00047     11/13/2014    ATTORNEY   UNAVAILABILITY   NOTICE   FILED   FOR
TRAMAINE Y. SCOTT

---

[6] "Racketeering activity" is defined in section 1961(1) in terms of a list of state and federal crimes. *See* 18 U.S.C. § 1961(1); *Bonton v. Archer Chrysler Plymouth, Inc.,* 889 F.Supp. 995, 1001 (S.D.Tex.1995). It includes acts indictable under 18 U.S.C. § 1341, relating to mail fraud. *See* 18 U.S.C. § 1961(1)(B); *Whelan,* 319 F.3d at 231. The individual acts of "racketeering activity" are usually described as the "predicate offenses." *Bonton,* 889 F.Supp. at 1001. Any act that does not fall within RICO's definition of predicate offenses is not "racketeering activity." *See Heden v. Hill,* 937 F.Supp. 1230, 1242 (S.D.Tex.1996).

*Defendant's Amended Counterclaims*                                                       *Page 85*

T00046     10/28/2014     NON-JURY SETTING ON TRIAL ON THE MERITS

COURT: 109 TRIAL DATE & TIME: 12/8/2014 8:30AM

P00045     10/27/2014     MOTION FOR SUMMARY JUDGMENT

W/ATTACHED EXHIBITS AND PROPOSED ORDER

500002     10/3/2014     ABSTRACT ANDREW M PARKER          ISSUED: 10/3/2014

P00043     9/25/2014     LETTER TO DISTRICT CLERK

RE: ENVELOPE

P00042     9/22/2014     REQUEST FOR SERVICE AND PROCESS

000002     8/18/2014     SUMMARY JUDGMENT

(PARTIAL)

JUDGE: GLORIA SALDANA

VOL: 4270 PAGE: 813 PAGE COUNT: 1

P00040     7/7/2014     VAC'T NOT'C FILED FOR

TRAMAINE SCOTT

P00039     6/23/2014     MOTION     FOR     PARTIAL     SUMMARY     JUDGMENT
(TRADITIONAL)

P00038     6/19/2014     FIRST AMENDED PETITION

P00037     5/5/2014     VAC'T NOT'C FILED FOR TRAMAINE SCOTT

P00036     3/20/2014     ATTORNEY     UNAVAILABILITY     NOTICE     FILED     FOR
          TRAMAINE Y. SCOTT

P00035     12/13/2013     CERTIFIED COPY MAILED OUT OF

ORDER DENYING PLT'S MOTION

LORETTA RANSAW/SAE

RE-SEND 12-20-13

P00034     12/13/2013     LETTER TO DISTRICT CLERK/RECORDING DEPT FROM
          LORETTA RANSAW

P00033     12/6/2013     LETTER FROM 4TH COURT OF APPEALS

P00032     12/2/2013     LETTER FROM 4TH COURT OF APPEALS

P00031     11/21/2013     LETTER FROM 4TH COURT OF APPEALS

*Defendant's Amended Counterclaims*                                    *Page 86*

P00030     11/21/2013     LETTER TO 225TH FR FOURTH COURT OF APPEALS RE
WRIT OF MANDAMUS AND APPENDIX

P00029     11/20/2013     LETTER

TO 225TH FR FOURTH COURT OF APPEALS RE

ORDER

P00027     11/20/2013     MEMORANDUM OPINION FROM 4TH COURT OF APPEALS

P00028     11/18/2013     LETTER FROM 4TH COURT OF APPEALS

P00025     11/18/2013     LETTER FROM 4TH COURT OF APPEALS

P00024     11/18/2013     LETTER FROM 4TH COURT OF APPEALS

RE: 04-13-00799-CV

P00026     11/15/2013     FAX MEMO/LETTER RECEIVED FROM

FOURTH COURT OF APPEALS RE ORDER


P00022     5/8/2013     MEMORANDUM OPINION FROM 4TH COURT OF APPEALS
PETITION FOR WRIT OF MANDAMUS DENIED

P00021     5/6/2013     ORIGINAL

LETTER TO 225TH DC FR SHERRYL FINLEY RE

PLTFS WRIT OF MANDAMUS

P00023     5/3/2013     ORDER FROM 4TH COURT OF APPEALS

PETITION FOR WRIT OF MANDAMUS IS

DENIED WITHOUT PREJUDICE

P00020     5/3/2013     LETTER FROM 4TH COURT OF APPEALS TO 225TH DC RE
ORDER

P00019     5/l/2013     LETTER FROM 4TH COURT OF APPEALS

RELATORS PETITION FOR WRIT OF MANDAMUS

HAS THIS DATE BEEN FILED

P00017     5/1/2013     LETTER FROM 4TH COURT OF APPEALS

TO 225TH DC RE WRIT OF MANDAMUS

P00018     4/30/2013     FAX MEMO/LETTER RECEIVED FROM

FOURTH COURT OF APPEALS RE ORDER

000001    4/23/2013    ORDER DENYING

PLTFS MOTION TO COMPEL

JUDGE: PETER SAKAI

VOL: 4029 PAGE: 3083 PAGE COUNT: 1

P00016    4/22/2013    CERTIFICATE OF DEPOSITION OF

JOHN PINCKNEY

P00015    LETTER TO DISTRICT CLERK

FROM SHERRYL FINLEY W/PROPOSED ORDER TO

COMPEL

P00014    4/2/2013    JUDGES DOCKET NOTES

NO RECORD TAKEN

T00013    3/22/2013    NON-JURY

SETTING ON M/T COMPEL

**ASSIGNED TO JUDGE SAKAI**

COURT: 109 TRIAL DATE & TIME: 4/2/2013 8:30AM

P00012    3/21/2013    MOTION TO COMPEL

OF FIDELITY NATIONAL TITLE INSURANCE

COMPANY W/PROPOSED ORDER

P0OOl1    8/14/2012    CERTIFICATE OF WRITTEN DISCOVERY

OF FIDELITY NATIONAL TITLE INSURANCE

COMPANY

P00005    5/17/2012    CERTIFICATE OF WRITTEN DISCOVERY

OF FIDELITY NATIONAL TITLE INSURANCE

COMPANY

S00OOl    4/4/2012    CITATION CERTIFIED MAIL ANDREW M PARKER

ISSUED: 4/4/2012 RECEIVED: 4/4/2012

EXECUTED: 4/4/2012 RETURNED: 4/10/2012

P00004     4/2/2012     SERVICE ASSIGNED TO CLERK 1

P00003     4/2/2012     REQUEST FOR

           CIT (ATTY CHANGED SRVC TO CERT MAIL)

P00002     4/2/2012     CIVIL CASE INFORMATION SHEET

POOOO1     4/2/2012     PLAINTIFF'S ORIGINAL PETITION

6.145   The filings, emails and phone calls affect intrastate and/or interstate commerce because they cross a state line.

6.146   Upon information and belief, the substance of the perjurious affidavits and filings containing false information were discussed between various attorneys, Fidelity employees, representative/agents and offices of Fidelity both in Texas, Nebraska and California.

6.147   The wire signals carrying these conversations crossed state lines.

6.148   All Fidelity attorneys that made appearances at the Bexar County Courthouse for hearings in these proceedings have participated in the litigation and therefore are named herein as supporting actors for Parker's civil RICO claim.

6.149   All Fidelity attorneys that assisted or reviewed the pleadings in any capacity have participated in the referenced litigation therefore are named herein as supporting actors for Parker's civil RICO claim whether known or unknown at this juncture but will be revealed in Discovery.

6.150   All Fidelity personnel in all Fidelity offices in any capacity have participated in the referenced litigation therefore are named herein as supporting actors for Parker's civil RICO claim whether known or unknown at this juncture.

6.151    The attorneys attending the hearings in the Bexar County Courthouse charged their plane tickets on credit cards.

6.152 The charges for the plane tickets were cleared on the Federal Reserve's ACH debit system as a debit/credit for participating members.

6.153   The signal requesting the debit and advising of the credit on the Federal Reserve's ACH system crossed a state line.

6.154   The signal for the ACH debit or credit for the credit card charges to purchase tickets to come to San Antonio to further the RICO scheme alleged herein to secure judgments and also for the litigation against Parker by Fidelity affected interstate commerce.

6.155   Parker incurred damages proximately caused by the Counter Defendants conspiring to commit violations of the RICO statutes that allow recovery of treble damages for which Parker now sues.

## VII.
## EXEMPLARY DAMAGES

7.1   Parker would further show that the acts and omissions of the Counter Defendants complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Counter Defendants at the expense of Parker.   In order to punish said Counter Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Parker also seeks recovery from Counter Defendants for exemplary damages as provided by Section 41.003(a)(1) of the Texas Civil Practice and Remedies Code.

## VIII.
## DECLARATORY JUDGMENT

8.1   There exists a genuine controversy between the parties herein that would be terminated by the granting of a declaratory judgment.   Parker therefore requests this Honorable Court enter a declaratory judgment that Counter Defendants are in violation of State law; that the Title Policy issued by Fidelity denies Fidelity any standing or right to sue Parker as stated herein; and, further denies Fidelity any standing or right to sue Parker for Fidelity's lack of performance

under the terms of the Title Policy contract and lack of Due Diligence in entering into the Title Policy contract.

8.2   Parker would show that Counter Defendants have violated State law and the contract between the parties by failing and refusing to perform under the terms of the Title Policy contract.

8.3   Parker would show that Counter Defendants have violated State law and the Title Policy contract between the parties by creating, filing in the Records of this case, and proffering to the District Courts in Bexar County, Texas, fraudulent, perjured testimony and fraudulent pleadings seeking benefit to Counter Defendants and to the detriment and damage of Parker.

8.4   Parker is a "person" interested under a deed, will, written contract, or other writing constituting a contract, whose rights are affected and who seeks to have determined questions of construction relating to the foregoing-described Title Policy contract between Parker and Counter Defendants and who further seeks to obtain a declaration of rights, status or other legal relations thereunder within the meaning of the Texas Civil Practice and Remedies Code §37.004.   Parker petitions this Honorable Court pursuant to the Uniform Declaratory Judgments Act, Chapter 37 of the Civil Practice and Remedies Code of Texas, to make a determination as to whether State law and the Title Policy contract between the parties allows Counter Defendants the right to create, file in the Records of this case, and proffer to the District Courts in Bexar County, Texas, fraudulent, perjured testimony and fraudulent pleadings seeking benefit to Counter Defendants and to the detriment and damage of Parker.

8.5   In support thereof, Parker would show that a real dispute exists between Parker and Counter Defendants, and the intervention and declaratory judgment of this Court is required.

## IX.
## ATTORNEY'S FEES

9.1     Due to the actions of Counter Defendants, Parker secured the services of Kristine

Arlitt, PLLC, and Kristine Arlitt, Attorney at Law, to represent, prosecute these causes of action

and defend Parker's rights herein.   Request is made for all costs and reasonable and necessary

attorney's fees incurred by or on behalf of Parker herein, including all fees necessary in the event

of an appeal of this cause to the Court of Appeals in amount no less than $100,000.00; and, the

Supreme Court of Texas in an amount no less than $50,000.00 as provided by Chapters 37.009

and 38 of the Texas Civil Practice and Remedies Code; and, under common law.

## X. PRAYER

10.1 WHEREFORE, Counter Plaintiff, ANDREW MAXWELL PARKER, now

respectfully prays this Honorable Court order all Counter Defendants to be cited to appear and

answer and that on final hearing, Counter Plaintiff have judgment as follows:

1.      Compensatory damages within the jurisdictional limits of the Court;

2.      Pre-judgment interest as provided by law;

3.      Post-judgment interest as provided by law;

4.      An award of exemplary damages against the Counter Defendants in a sum
        determined by the trier of fact;

5.      Judgment for Counter Plaintiff's reasonable and necessary attorney fees and costs;

6.      Judgment for Counter Plaintiff's reasonable and necessary attorney fees and costs
        if this matter is appealed to the appellate level in amount no less than $50,000, and,
        if further presented to the Supreme Court of the State of Texas for review in an
        amount no less than $50,000;

7.      Declaratory Judgment as requested herein;

8.      Set all Andrew M. Parker's causes of action for trial on the merits; and,

9.      Grant Andrew Maxwell Parker all relief he may be entitled in both equity and under

the law.

                            Respectfully submitted,

                            KRISTINE ARLITT, PLLC
                            By: /s/ Kristine Arlitt
                            Kristine Arlitt, Attorney at Law
                            Texas Bar Number 24034117
                            PO Box 90771
                            San Antonio, Texas 78209
                            206 East Locust Street
                            San Antonio, Texas 78212
                            Direct: 210-269-6101
                            Facsimile:     210-821-6105
                            kristine@arlittlaw.com


# **DISCOVERY**

Discovery is hereto attached.

/s/ Kristine Arlitt

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the above pleading was served in accordance with the Texas Rules of Civil Procedure as indicated below on the 12TH day of August 2018 as indicated below.

Fidelity National Title Insurance Company        Via E-filing
Gregory Brewer, Attorney at Law
Texas Bar Number 24060581
Jonathan J. Cunningham
Texas Bar Number 00793574
5151 Beltline Road, Ste 410
Dallas, Texas 75254
Phone: 972-812-6482
Fax:   972-812-9408
gregory.brewer@fnf.com
*Attorney of Record for Fidelity National Title Insurance Company,*
*Plaintiff and Counter Defendant*


I HEREBY certify that a true and correct copy of the above pleading will be served on the newly named and identified below listed Counter Defendants in compliance with the Texas Rules of Civil Procedure.

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, FL 32204
*Counter Defendant*

Jonathan J. Cunningham
Fidelity National Title Insurance Company
5151 Beltline Road, Suite 410
Dallas, Texas 75254
*Counter Defendant*

Gregory Brewer
Fidelity National Title Insurance Company
5151 Beltline Road, Suite 410
Dallas, Texas 75254
*Counter Defendant*

Tramaine Y. Scott,
a/k/a "Tramaine Yvonne Tinner"
Fairway Independent Mortgage Corporation
1800 Golden Trail Court
Carrollton, Texas 75010.

*Defendant's Amended Counterclaims*                                    *Page 94*

*Counter Defendant*

Shawn Heine
Fidelity National Title Insurance Company
5151 Beltline Road, Suite 410
Dallas, Texas 75254
*Counter Defendant*

Amy Miles
Fidelity National Title Insurance Company
5151 Beltline Road, Suite 410
Dallas, Texas 75254
*Counter Defendant*

Sherry Finley
Fidelity National Title Insurance Company
5151 Beltline Road, Suite 410
Dallas, Texas 75254
*Counter Defendant*

Christina Johnson
Fidelity National Title Insurance Company
5151 Beltline Road, Suite 410
Dallas, Texas 75254
*Counter Defendant*

Chris Fredericks
Fidelity National Title Insurance Company
5151 Beltline Road, Suite 410
Dallas, Texas 75254
*Counter Defendant*

John M. Ledyard
Fidelity National Title Insurance Company
5151 Beltline Road, Suite 410
Dallas, Texas 75254
*Counter Defendant*

Cale O'Brien
Fidelity National Title Insurance Company
5151 Beltline Road, Suite 410
Dallas, Texas 75254
*Counter Defendant*

/s/  Kristine Arlitt

*Defendant's Amended Counterclaims*                                    *Page 95*

# EXHIBIT D



## Mortgagee Policy of Title Insurance
### Issued by

 **Fidelity National Title**
INSURANCE COMPANY

*0764775599*

Policy Number: TX9960320094-10-41001303-2008.2710143-75423163

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures as of Date of Policy shown in Schedule A, against loss or damage not exceeding the amount of insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than a stated therein;

2. Any defect in or lien or encumbrance on the title;

3. Lack of a right of access to and from the land;

4. The invalidity or unenforceability of the lien of the insured mortgage upon the title;

5. The priority of any lien or encumbrance over the lien of the insured mortgage;

6. Lack of priority of the lien of the insured mortgage over any statutory or constitutional mechanic's contractor's, or materialman's lien for labor or material having its inception on or before Date of Policy;

7. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens;

8. Lack of good and indefeasible title.

The Company also will pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extend provided in the Conditions and Stipulations.

IN WITNESS HEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY has caused this policy to be executed by its President under the seal of the Company, but this policy is to be valid only when it bears an authorized countersignature, as of the date set forth in Schedule A.

Issued by:

TX996032009 41001303
FNT San Antonio Main Office
8200 IH 10 West
San Antonio, TX 78230
Tel:(210) 348-2880
Fax:(210) 340-3428

FIDELITY NATIONAL TITLE INSURANCE COMPANY

(SEAL)   By: _____

ATTEST _____

FORM 1485
Reprinted (8/99)

Texas T-2: Mortgage Policy of Title Insurance
Effective 1-1-93 (Rev. 10-1-97)

# EXHIBIT D

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorney's fees or expenses that arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking that has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or
   (e) resulting in loss or damage that would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory or constitutional mechanic's, contractor's, or materialman's lien for labor or material having its inception subsequent to Date of Policy.

7. The refusal of any person to purchase, lease or lend money on the estate or interest covered hereby in the land described in Schedule A because of unmarketability of the title.

8. Any claim which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or other state or federal creditors' rights laws that is based on either (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer or a voidable distribution or a voidable dividend, (ii) the subordination or recharacterization of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination or (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure to the Company or its issuing agent to timely file for record the instrument of transfer to the insured after delivery or the failure of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

1. **DEFINITION OF TERMS**
   The following terms when used in this policy mean:
   (a) "insured": the insured named in Schedule A. The term "insured" also includes
      (i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchase for value without knowledge of the asserted defect, lien, encumbrance adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);
      (ii) any governmental agency or governmental instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;
      (iii) the parties designated in Section 2(a) of these Conditions and Stipulations.
   (b) "insured claimant": an insured claiming loss or damage.
   (c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice that may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.
   (d) "land": the land described or referred to in Schedule A, and improvements affixed thereto that by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.
   (e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.
   (f) "public records": records established under state statute at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" also shall include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.
   (g) "access": legal right of access to the land and not the physical condition of access. The coverage provided as to access does not assure the adequacy of access for the use intended.

2. **CONTINUATION OF INSURANCE**
   (a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure or their legal manner which discharges the lien of the insure mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality that acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.
   (b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insure in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, (ii) an indebtedness secured by a purchase money mortgage given to the insured.
   (c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:
      (i) the Amount of Insurance stated in Schedule A;
      (ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to advanced pursuant to the insure mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest

# EXHIBIT D

in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

**3.    NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The insured shall notice the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, or (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest that is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy. If prompt notice shall not be given to the Company, then as to the insured all liability of the company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

Subject to the provisions of this policy, upon acquisition of all or any part of the estate or interest in the land pursuant to the provisions of Section 2 of these Conditions and Stipulations, when, after the date of the policy, the insured notifies the Company as required herein of a lien, encumbrance, adverse claim or other defect in title to the estate or interest in the land insured by this policy that is not excluded or excepted form the coverage of this policy, the company shall promptly investigate the charge to determine whether the lien, encumbrance, adverse claim or defect is valid and not barred by law or statute. The Company shall notify the insured in writing, within a reasonable time, of its determination as to the validity or invalidity of the insured's claim or charge under the policy. If the Company concludes that the lien, encumbrance, adverse claim or defect is not covered by this policy, or was otherwise addressed in the closing of the transaction in connection with which this policy was issued, the Company shall specifically advise the insured of the reason for its determination. If the Company concludes that the lien, encumbrance, adverse claim or defect is valid, the Company shall take one of the following actions: (i) institute the necessary proceedings to clear the lien, encumbrance, adverse claim or defect from the title to the estate as insured; (ii) indemnify the insured as provided in this policy; (iii) upon payment of appropriate premium and charges therefore, issue to the insured claimant or to a subsequent owner, mortgagee or holder of the estate or interest in the land insured by this policy, a policy of title insurance without exception for the lien, encumbrance, adverse claim or defect; (v) secure a release or other document discharging the lien, encumbrance, adverse claim or defect; or (vi) undertake a combination of (i) through (v) herein.

**4.    DEFENSE AND PROSECUTION OF ACTIONS: DUTY OF INSURED CLAIMANT TO COOPERATE**

(a)    Upon written request by the insured and subject to the options contained in Section 6 of these Conditions, and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action that allege matters not insured against by this policy.

(b)    The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, an shall not thereby concede liability or waive any provisions of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c)    Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d)    In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option the name of the insured for that purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matters requiring such cooperation.

**5.    PROOF OF LOSS OR DAMAGE**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 91 days after the insured claimant shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by an authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by an authorized representative of the Company, all records, books, ledgers, checks, correspondence, and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by an authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under the policy as to that claim.

**6.    OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS: TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a)    To Pay or Tender Payment of the Amount of Insurance or to Purchase Indebtedness.

(i)    To pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii)    to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company up to the time of purchase and which the Company is obligated to pay. If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage together with any collateral security, to the Company upon payment therefore. Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b)    To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

# EXHIBIT D

(i)   to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured by the insured claimant, which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii)  to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any cost, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company up to the time of payment and which the Company is obligated to pay. Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**7.  DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a)  the liability of the Company under this policy shall not exceed the least of:

(i)   the Amount of Insurance stated in Schedule A, or, if applicable, the amount of Insurance as defined in Section 2(c)of these Conditions and Stipulations;

(ii)  the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy at the date the insured claimant is required to furnish to Company a proof of loss or damage in accordance with Section 5 of these Conditions and Stipulations.

(b)  In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c)  The company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8.  LIMITATION OF LIABILITY**

(a)  If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or otherwise establishes the lien of the insured mortgage, all as insured, or takes action in accordance with Section 3 or Section 6, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b)  In the event of any litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c)  The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d)  The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land, which at Date of Policy were secured by the insured mortgage an which the insured was continued to be obligated to advance at and after Date of Policy.

**9.  REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a)  All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisitions of the title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the Insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b)  Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release , shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c)  Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**10. LIABILITY NONCUMULATIVE**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken on Schedule B or to which the insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11. PAYMENT OF LOSS**

(a)  No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b)  When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12. SUBROGATION UPON PAYMENT OR SETTLEMENT**

(a)  **The Company's Right of Subrogation.**

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant. The Company shall be subrogated to and be entitled to all rights and remedies that the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies. If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant have recovered its principal, interest, and costs of collection.

(b)  **The insured's Rights and Limitations.**

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the property of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness. When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title or the estate or interest or the priority or the enforceability of the lien of the insured mortgage, as insured the Company shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's rights of subrogation.

(c)  **The Company's Rights Against Non-Insured Obligors.**

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in these instruments which provide for subrogation rights by reason of this policy. The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an

# EXHIBIT D

indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

13. **ARBITRATION**

Unless prohibited by applicable law or unless this arbitration section is deleted by specific provision in Schedule B of this policy, either the Company or the Insured may demand arbitration pursuant to the Title Arbitration Rules or the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less SHALL BE arbitrated at the request of either the Company or the Insured, unless the Insured is an individual person (as distinguished from a corporation, trust, partnership, association or other legal entity). All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the Insured, the rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

14. **LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provisions of this policy, this policy shall be construed as a whole.

(b) any claim of loss or damage, whether or not based on negligence , and which arises out of the status of the lien of the Insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

15. **SEVERABILITY**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provisions an all other provisions shall remain in full force and effect.

16. **NOTICES, WHERE SENT**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include that provision and shall be addressed to the Company at Fidelity National Title Insurance Company, National Claims Administration, P.O. Box 45023, Jacksonville, Florida 32232-5023.

**COMPLAINT NOTICE**

Should any dispute arise about your premium or about a claim that you have filed, contact the agent or write to the Company that issued the policy. If the problem is not resolved, you also may write the Texas Department of Insurance, P.O. Box 149091, Austin, TX 78714-9091, Fax No. (512)475-1771. This notice of complaint procedure is for information only and does not become part or condition of this policy.

# EXHIBIT D

## MORTGAGEE POLICY OF TITLE INSURANCE

### SCHEDULE A

File Number: 06-41001303                          Policy Number: 2710143-75423163

Amount of Insurance: $1,500,000.00
Premium: $8,104.00

Date of Policy: January 4, 2007 at 08:27 a.m.

1.    Name of Insured:

      WASHINGTON MUTUAL BANK, FA, AND EACH SUCCESSOR IN OWNERSHIP OF THE
      INDEBTEDNESS SECURED BY THE INSURED MORTGAGE, EXCEPT A SUCCESSOR WHO IS AN
      OBLIGOR UNDER THE PROVISIONS OF SECTION 12(c) OF THE CONDITIONS AND
      STIPULATIONS

2.    The estate or interest in the land that is insured as encumbered by the insured mortgage is:

      Fee Simple

3.    Title to the estate or interest in the land is insured as vested in:

      Andrew M. Parker

4.    The insured mortgage and assignments thereof, if any, are described as follows:

      Deed of Trust executed by Andrew M. Parker, to Larry Andrews, Trustee, dated December 21,
      2006, filed for record on January 4, 2007 in the Official Records of the County Clerk of Bexar
      County, Texas, under Instrument File Number 20070002776, securing the payment of one note
      of even date therewith in the principal sum of $1,500,000.00, due and payable to
      WASHINGTON MUTUAL BANK, FA and bearing interest as provided; and all the terms,
      conditions and stipulations contained therein, including, but not limited to, any additional
      indebtedness, if any, secured by said instrument.

5.    The land referred to in this policy is described as follows:

      Lots 11, 12 and 13, Block 11, Olmos Park Estates, in the City of Olmos Park, Bexar County,
      Texas, according to plat thereof recorded in Volume 980, Page(s) 16-17, Deed and Plat Records
      of Bexar County, Texas.

# EXHIBIT D

GF No. 08-41001303
Policy No. 2710143-75423163

## SCHEDULE B

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) that arise by reason of the terms and conditions of the leases and easements, if any, shown in Schedule A, and the following matters;

1.   The following restrictive covenants of record itemized below, but the Company insures that any such restrictive covenants have not been violated so as to affect, and that a future violation thereof will not affect, the validity or priority of the mortgage hereby insured (insert specific recording data or delete this exception):

Volume 1751, Page 519 and Volume 1587, Page 86, Deed Records of Bexar County, Texas and Volume 980, Page 16-17, Deed and Plat Records of Bexar County, Texas,

but omitting any covenant or restriction based on race, color, religion, sex, handicap, familial status or national origin unless, and only to the extent that, said covenant (a) is exempt under Chapter 42, Section 3607 of the United States of (b) relates to handicap but does not discriminate against handicapped persons.

2.   Any shortages in area.

3.   Standby fees, taxes and assessments by any taxing authority for the year 2006, and subsequent years, but not those taxes or assessments for prior years because of an exemption granted to a previous owner of the property under Section 11.13, Texas Tax Code, or because of improvements not assessed for a previous tax year.

4.   Liens and leases that affect the title to the estate or interest, but that are subordinate to the lien of the insured mortgage.
     (Insert here all other specific exceptions as to superior liens, easements, outstanding mineral and royalty interests, etc.)

     a.   Building setback line, 40 feet wide, along front lot line, as shown on above mentioned plat.

     b.   Building setback line, 20 feet wide, along side lot line, as shown on above mentioned plat.

     c.   Building setback line, 60 feet wide, along rear lot line, as shown on above mentioned plat.

     d.   Any and all unrecorded leases.

# EXHIBIT D

GF No. 06-41001303
Policy No. 2710143-75423163

a.   Deed of Trust dated August 25, 2004, recorded in Volume 10947, Page 2195, Real
Property Records of Bexar County, Texas, executed by Andrew M. Parker, securing
payment of one certain promissory note of even date therewith in the principal amount
of $1,500,000.00, payable to the order of Resource Mortgage Banking, Ltd., as therein
provided.

Said note, together with all liens securing same, having been assigned in due course
to Mortgage Electronic Registration Systems, Inc., by instrument dated October 7,
2005, recorded in Volume 11708, Page 1998, of the Real Property Records of Bexar
County, Texas.

**Fidelity National Title Insurance Company**

(Authorized Countersignature)

## EXHIBIT D

### ISSUED BY

 **Fidelity National Title**
INSURANCE COMPANY

## ENVIRONMENTAL PROTECTION LIEN ENDORSEMENT

Attached to Mortgage Policy Number 2710143-75423163, issued by Fidelity National Title Insurance Company,

The insurance afforded by this Endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the Insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a)    any environmental protection lien which, at the Date of Policy, is recorded in those records established under state statutes at the Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B; or

(b)    any environmental protection lien provided for by any state statute in effect at the Date of Policy, except environmental protection liens provided for by the following state statutes:
1.    TEX.HEALTH & SAFETY CODE ss361.194
2.    TEX.HEALTH & SAFETY CODE ss342.007,342.008
3.    TEX.LOCAL GOV'T CODE ss214.001,ss214.0015(b),(d), and (e)
4.    TEX.NAT.RES.CODE ss134.150, if applicable.

This Endorsement is made a part of the Policy and is subject to all of the terms and provisions thereof and of any prior Endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the Policy and any prior Endorsements, nor does it extend the effective date of the Policy and any prior Endorsements, nor does it increase the face amount thereof.

Dated:  January 4, 2007

Fidelity National Title Insurance Company

_____

(Authorized Countersignature)

*Fidelity National Title Insurance Company*

BY _____ President

ATTEST _____ Secretary

ENDORSEMENT FORM T-36: Environmental Protection Lien
(t36 0051)

# EXHIBIT D

## ISSUED BY



Fidelity National Title
INSURANCE COMPANY

## RESTRICTIONS, ENCROACHMENTS, MINERALS ENDORSEMENT

Attached to Policy No.: 2710143-75423163

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1. The existence at Date of Policy of any of the following:

    (a)    Covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.

    (b)    Unless expressly excepted in Schedule B:

        (1)    Present violations on the land of any enforceable covenants, conditions or restrictions, and any existing improvements on the land which violate any building setback lines shown on a plat of subdivision recorded or filed in the public records.

        (2)    Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land which, in addition, (i) establishes an easement on the land; (ii) provides a lien for liquidated damages; (iii) provides for a private charge or assessment; (iv) provides for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.

        (3)    Any encroachment of existing improvements located on the land onto adjoining land, or any encroachment onto the land of existing improvements located on adjoining land.

        (4)    Any encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.

        (5)    Any notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records.

2. Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in the land by the Insured, provided the violation results in:

    (a)    Invalidity, loss of priority, or unenforceability of the lien of the insured mortgage; or

    (b)    loss of title to the estate or interest in the land if the Insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.

3. Damage to existing improvements, including lawns, shrubbery or trees:

    (a)    which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved;

    (b)    resulting from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.

ENDORSEMENT FORM T-19: Restrictions, Encroachments, Minerals Endorsements

excepted in Schedule B.

# EXHIBIT D

5. Any final court order or judgment denying the right to maintain any existing improvements on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat of subdivision recorded or filed in the public records.

Wherever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

As used in paragraphs 1(b)(1) and 5, the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Signed under seal for the Company, but this endorsement is to be valid only when it bears an authorized countersignature.

Dated:  January 4, 2007

Fidelity National Title Insurance Company

_____
(Authorized Countersignature)

Fidelity National Title Insurance Company

BY _____ President

ATTEST _____ Secretary

[SEAL]

**EXHIBIT D**
**ISSUED BY**



**Fidelity National Title**
INSURANCE COMPANY

**EQUITY LOAN MORTGAGE ENDORSEMENT**

Attached to and made a part of Fidelity National Title Insurance Company Mortgagee Policy Number 2710143-75423163dated January 4, 2007.

The policy is hereby amended as follows:

1.  The following new Subsection (h) is inserted in Section 1 of the Conditions and Stipulations:

    (h)    "consumer credit protection law": any applicable federal or state regulation, law or constitutional provision relating to consumer credit protection. For purposes of the policy and paragraph 5 of the Exclusions from Coverage, consumer credit protection law includes, but is not limited to, the provisions of Subsections (a)(6), (g), and (t) of Section 50, Article XVI, Texas Constitution and any statutory or regulatory requirements for a mortgage made pursuant to Subsection (a)(6).

2.  Notwithstanding the specific provisions of paragraph 5 of the Exclusions from Coverage relating to consumer credit protection laws, the Company insures the Insured against loss, if any, sustained by the Insured under the terms of the policy because of invalidity or unenforceability of the lien of the insured mortgage by reason of the following:

    (a)    The failure of the insured mortgage to be created under a written agreement with the consent for each owner of the estate or interest described in Schedule A and each owner's spouse, as set forth in Subsection (a)(6)(A) of Section 50, Article XVI, Texas Constitution.

    (b)    The land being homestead property designated for agricultural use as provided by statutes governing property tax, as set forth in Subsection (a)(6)(I) of Section 50, Article XVI, Texas Constitution.

    (c)    The indebtedness secured by the lien of the insured mortgage on the land not being the only debt secured by a valid lien on the land at the time the extension of credit is made pursuant to the insured mortgage unless the other debt was made for a purpose described by Subsections (a)(1) through (a)(5) or Subsection (a)(8) of Section 50 of Article XVI, Texas Constitution, as set forth in Subsection (a)(6)(K) of Section 50, Article XVI, Texas Constitution.

    (d)    The extension of credit secured by the lien of the insured mortgage closing before the first anniversary of the closing date of any other extension of credit described by Subsection (a)(8) of Section 50 of Article XVI, Texas Constitution and secured by a valid lien on the land, as set forth in Subsection (a)(6)(M)(ii) of Section 50, Article XVI, Texas Constitution.

    (e)    The failure of the insured mortgage to contain a disclosure that the extension of credit is the type of credit defined by Section 50(a)(6), Article XVI, Texas Constitution, as set forth in Subsection (a)(6)(Q)(vi) of Section 50(a)(6), Article XVI, Texas Constitution.

    (f)    The extension of credit secured by the lien of the insured mortgage being closed at a location other than the office of the lender, an attorney at law, or a title company, as set forth in Subsection (a)(6)(N) of Section 50, Article XVI, Texas Constitution.

3.  Provided the insured mortgage secures a home equity line of credit, the Company insures the Insured that any disbursements under the home equity line of credit made subsequent to the date of this policy as provided in the insured mortgage shall be deemed to have been made as of the date of this policy and such disbursements and accrued interest shall have the same priority as any advances made as of the date of this policy, except as to (i) bankruptcies affecting the estate or interest described on Schedule "A" hereof prior to the date of any such advance or disbursement; and (ii) taxes, costs, charges, damages and other obligations to the government secured by statutory liens arising or recorded subsequent to the date of the Policy.

4.  Except as provided in paragraph 2 above, the Company does not insure against invalidity or unenforceability of the lien of the insured mortgage which arises out of the transaction evidenced by the insured mortgage and is based on any consumer credit protection law.

ENDORSEMENT FORM T-42: Equity Loan Mortgage
Effective 1/12/98(142 ed/bi)

# EXHIBIT D

5.     This endorsement does not insure against invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, arising out of usury or truth in lending laws.

This Endorsement, when countersigned below by an Authorized Countersignature, is made a part of said policy. Except as expressly modified by the provisions hereof, this endorsement is subject to the following policy matters: (i) Insuring Provisions; (ii) Exclusions from Coverage; (iii) Schedule B Exceptions; (iv) the Conditions and Stipulations; and (v) any prior endorsements. Except as stated herein, this endorsement does not: (i) extend the effective date of the policy and/or any prior endorsements; or (ii) increase the face amount of the policy.

Dated:  January 4, 2007

Countersigned:

Fidelity National Title Insurance Company

(Authorized Countersignature)

Fidelity National Title Insurance Company

SEAL

BY _____ President

ATTEST _____ Secretary

ENDORSEMENT FORM T-42: Equity Loan Mortgage
Effective 1/1/2/93/02 print

**EXHIBIT D**
**ISSUED BY**



## Fidelity National Title
INSURANCE COMPANY

## SUPPLEMENTAL COVERAGE EQUITY LOAN MORTGAGE ENDORSEMENT

Attached to and made a part of Fidelity National Title Insurance Company Mortgagee Policy Number 2710143-75423163 dated January 4, 2007.

**THIS ENDORSEMENT IS VOID AND OF NO EFFECT UNLESS IT IS ATTACHED TO A MORTGAGEE POLICY OF TITLE INSURANCE (FORM T-2), WHICH CONTAINS AN EQUITY LOAN MORTGAGE ENDORSEMENT (FORM T-42) ATTACHED TO THE MORTGAGEE POLICY.**

In this endorsement, the term "owner" shall refer to each owner of the land described in Schedule "A" of this Mortgage Policy.

1.  Notwithstanding the specific provisions of paragraph 5 of the Exclusions from Coverage relating to consumer credit protection laws and the provisions of the Equity Loan Mortgage Endorsement (T-42), the Company insures the insured against loss, if any, sustained by the insured under the terms of the Policy because of invalidity or unenforceability of the lien on the insured mortgage pursuant to Section 50(a)(6), Article XVI, Texas Constitution, arising solely by reason of one or more of the following:

    (a)  The insured mortgage and promissory note secured thereby being executed at an office of the Company or its Title Insurance Agent before the specific calendar date stated in written closing instructions from the insured named in Schedule A delivered to the Company or its Title Insurance Agent prior to the execution of the insured mortgage and promissory note.

    (b)  Any loan proceeds received by the Company or its title insurance Agent in connection with the extension of credit secured by the lien of the insured mortgage being disbursed by the Company or its Title Insurance Agent sooner than the fourth calendar day after the insured mortgage and promissory note secured thereby are executed.

    (c)  A document expressly purporting to evidence an election not to rescind the extension of credit secured by the lien of the insured mortgage being executed by the owner and spouse, if any, of the owner, in the presence of an escrow officer of the Company or its Title Insurance Agent on or before the date that the insured mortgage and promissory note secured thereby were executed.

    (d)  Failure of the Company or its Title Insurance Agent to provide the owner with a copy of all documents related to the extension of credit secured by the lien of the insured mortgage that were executed by the owner at the office of the Company or its Title Insurance Agent on the date that the owner executed the insured mortgage and promissory note secured thereby.

    (e)  The Company or its Title Insurance Agent collecting or disbursing any fees not shown on the final settlement statement prepared by the Company or its Title Insurance Agent and sent to the lender named on the settlement statement prior to the execution of the insured mortgage and the promissory note secured thereby.

    (f)  Blanks (other than signature lines, if any, for execution by the lender) in the following instruments left to be filled in when executed by the owner in an office of the Company or its Title Insurance Agent: (i) an instrument prepared by the Company or its Title Insurance Agent, (ii) the purported written acknowledgment as to the fair market value, (iii) the insured mortgage, (iv) the promissory note secured thereby, or iv) affidavits of compliance with Section 50(a)(6), Article XVI, Texas Constitution.

    (g)  The failure of the written document purporting to be a written acknowledgment as to the fair market value of the land to have attached, at the time of execution of such written document by the owner, a purported appraisal or a purported evaluation of the fair market value of the land. However, the Company does not insure that the purported written acknowledgment or the purported appraisal or purported evaluation complies with Subsection (a)(Q)(ix) or subsection (h) of Section 50, Article XVI, Texas Constitution or any laws or regulations relating to the subject matter of said subsections.

ENDORSEMENT FORM T-42.1: Supplemental Coverage Equity Loan Mortgage

# EXHIBIT D

(h)  The failure of the written document purporting to be an acknowledgment as to the fair market value to be executed by the owner on the date that the insured mortgage and promissory note secured thereby are executed by the owner.

(i)  Part of the land described in Schedule A not being the homestead of the owner.

(j)  Title to other land which, according to the public records, appears to be vested in the name of the owner as shown on Schedule A and which is not described in Schedule A and which is located in the same county in which the land described in Schedule A is located, being subject at Date of Policy to a mortgage executed by the owner, recorded in the public records, which discloses that it secures an extension of credit made pursuant to Subsection (a)(6) of Section 50, Article XVI, Texas Constitution.

(k)  Title to other land which, according to the public records, appears to be vested in the name of the owner as shown on Schedule A and which is not described in Schedule A and which is located in the same county in which the land described in Schedule A is located, having been subject to a mortgage executed by the owner, recorded in the public records, which disclosed that it secured an extension of credit made pursuant to Subsection (a)(6) of Section 50, Article XVI, Texas Constitution, that was closed within one year prior to Date of Policy.

(l)  Failure of the Company or its Title Insurance Agent to provide the owner a copy of the final settlement statement prepared by the Company or its Title Insurance Agent itemizing the actual fees, points, interest, costs and charges collected or disbursed by the Company or its Title Insurance Agent at least one calendar day before the business day or subsequent calendar day that the owner executed the insured mortgage and the promissory note secured thereby. As used in this paragraph (l), the term business day shall have the meaning assigned to such term by the Texas Finance Commission and/or the Texas Credit Union Commission pursuant to the authority granted such agencies by sections 11.308 and 15.413 of the Texas Finance Code, respectively.

2.  This Endorsement does not insure against invalidity or unenforceability of the lien on the insured mortgage, or claim thereof, arising out of usury or truth in lending laws.

3.  Except as provided in paragraph 1 above and except as provided in the Equity Loan Mortgage Endorsement (T-42), the Company does not insure against invalidity or unenforceability of the lien on the insured mortgage, which arises out of the transaction evidenced by the insured mortgage and is based on any consumer credit protection law.

4.  This Endorsement does not represent or insure that a Title Insurance Agent of the Company is the agent of the Company other than for insurance policies, as provided by applicable law.

This Endorsement when countersigned below by an Authorized Countersignature is made a part of said Policy. Except as expressly modified by the provisions hereof, this endorsement is subject to the following Policy matters: (i) Insuring provisions; (ii) Exclusions from Coverage; (iii) Schedule "B" Exceptions; (iv) the Conditions and Stipulations; (v) the Equity Loan Mortgage Endorsement (T-42) and all of the terms thereof, except as it may be modified by deletion of any subparagraph of paragraph 2 thereof; and (vi) any other prior endorsements. Except as stated herein, this Endorsement does not: (i) extend the effective date of the Policy and/or any prior endorsements; or (ii) increase the face amount of the Policy.

Dated: January 4, 2007

Countersigned:

**Fidelity National Title Insurance Company**

(Authorized Countersignature)

**Fidelity National Title Insurance Company**

BY

President

ATTEST

Secretary

SEAL

ENDORSEMENT FORM T-42.1: Supplemental Coverage Equity Loan Mortgage
Effective 11/12/08